UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:16-cv-24687-WILLIAMS/Simonton

EDGARDO LEBRON,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.
a Liberian Corporation,

    Defendant.
_____/

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, ROYAL CARIBBEAN CRUISES, LTD., (RCL) by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and this Honorable Court's Scheduling Order [D.E. 16], hereby moves for entry of an Order granting summary judgment in its favor, and in support thereof, states as follows:

### **INTRODUCTION**

This is a maritime personal injury action wherein Plaintiff, EDGARDO LEBRON, claims that he fell while ice skating onboard the Defendant's vessel *Adventure of the Seas*. [D.E. 1 ¶¶ 10, 25]. The Complaint alleges that Plaintiff's fall was caused by: (1) movement of the ship [D.E.1 ¶16-17 and 50(c)-(d)]; (2) poorly maintained skates [D.E.1 ¶14, 18, 21, 30, 32, 38, and 50(e)-(g). (i) and (o)]; and/or (3) a poorly maintained ice skating rink. [D.E.1 ¶15, 29, 31, 36, 37, 40, and 50(a), (e), (g). (l)-(n)]. Summary judgment is appropriate because (1) there is no record evidence of a *dangerous condition*; (2) Royal Caribbean had no *notice* of any dangerous condition; (3) Royal Caribbean had no duty to warn Plaintiff of the risk of falling and possibly

injuring himself while ice skating on a ship because the associated danger constituted an open and obvious condition; (4) even if there was a duty to warn, the record demonstrates Royal Caribbean discharged that duty; and (5) there is no evidence that any negligence by Royal Caribbean proximately caused Plaintiff's injuries. Plaintiff fell because he lost his balance while attempting to prevent his daughter from falling. Royal Caribbean did not cause this accident.

## MEMORANDUM OF LAW

### I. This Action is Governed by General Maritime Law

Incidents occurring on navigable waters and/or bearing a significant relationship to traditional maritime activities are governed by maritime law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). Moreover, federal case law is well-settled that the law governing passenger suits against cruise lines is the general maritime law. *See e.g., Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. 1989); *Taiariol v. MSC Crociere, S.A.*, 2016 U.S. Dist. LEXIS 48966 (S.D. Fla. Apr. 12, 2016), In analyzing a maritime tort case, courts "rely on general principles of negligence law." In the instant matter, Plaintiff alleges that he was "a lawfully paying passenger aboard the Defendant's cruise ship vessel, the *Adventure of the Sea*." [D.E.1 ¶11]. Plaintiff further alleges that "the Court has admiralty or maritime jurisdiction pursuant to 28 U.S.C. §1333. [D.E.1, ¶3]. Thus, Plaintiff's claims are governed by United States maritime law.

### II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The judgment sought shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show that this standard is met. Fed. R. Civ. P. 56(c). Furthermore, as stated by the Supreme Court in *Celotex*:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

477 U.S. 317, 322-323 (1986); *see also Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

**III.     Royal Caribbean is Entitled to Summary Judgment on Plaintiff's Negligence Claim**

    **A.     There is no evidence of a dangerous condition**

The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D.Fla.2006); *Reinhardt v. Royal Caribbean Cruises, Ltd.*, 2013 WL 11261341, at *5 (S.D. Fla. 2013). Further, a cruise line is not an insurer of its' passengers safety. *See Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 n.1 (S.D. Fla. 1986) (holding that a shipowner is not "the insurer of the safety of [its] passengers" and the mere fact that an accident occurs does not render a shipowner liable); *Monteleone v. Bahama Cruise Line, Inc*, 838 F.2d 63, 65 (2d Cir. 1988) ("[A] shipowner is not an insurer of its passengers' safety.").

Plaintiff claims that three allegedly "dangerous conditions" caused his fall: (1) movement of the ship [D.E.1 ¶16-17 and 50(c)-(d)]; (2) poorly maintained skates [D.E.1 ¶14, 18, 21, 30, 32, 38, and 50(e)-(g). (i) and (o)]; and/or (3) a poorly maintained ice skating rink. [D.E.1 ¶15, 29, 31, 36, 37, 40, and 50(a), (e), (g). (l)-(n)]. There is no evidence that any of the three purported dangerous conditions actually existed at the time of Plaintiff's fall.

> i. The ship's movement did not create a dangerous condition as the record evidence is devoid of any evidence establishing irregular ship movement at the time of Plaintiff's incident.

First, Plaintiff alleges that movement of the ship created a dangerous condition, which caused his fall. [D.E. 1, ¶16-17 and 50(c)-(d)]. However, the record is devoid of any evidence to support this claim. On the date of the incident, Plaintiff participated in a 30-minute long all skate session, which began at 7:00PM on Day 3 of his voyage onboard *Adventure of the Sea*. [D.E. 102, Exhibit 8, 7-Day Schedule of Activity during Voyage 778]; [D.E.95; Exhibit 1; Lebron dep. 69:19-23]; [D.E. 97; Exhibit 3; Noel dep.134:3-5; 248:17-19]. According to surveillance footage, Plaintiff fell and injured himself at approximately 7:17 PM, at which time the vessel had been at sea for approximately two hours. [D.E.79; USB Thumb drive containing CCTV footage of the incident; 11:17:36pm]; [D.E.98; Exhibit 4; Ferrie dep. 33:1-5]. At the time of Plaintiff's fall, the ship's stabilizers were not extended, and the ship's thrusters were not on. [D.E.98; Exhibit 4; Ferrie dep. 33:13-16]. The Chief Safety Officer who investigated the incident testified that "the stabilizers are extended only when they are needed—if the ship's movement was closing itself." [D.E.98; Exhibit 4; Ferrie dep. 33:13-14]. Based on the ship's deck log for June 20, 2016, the stabilizers were not deployed because they were not necessary. [D.E. 108; Exhibit 14; Deck Log] [D.E. 98; Exhibit 4; Ferrie dep. 33:15-16]. Moreover, Plaintiff himself could not recall any ship movement at the time of his fall. [D.E.95; Exhibit 1; Lebron dep. 128:21-24]. Presumably, if there were irregular ship movement at the time of Plaintiff's fall, additional passengers would have also fallen. However, it is visibly clear from the CCTV video footage that only Plaintiff fell. There is simply no evidence to support the contention that Plaintiff fell as a result of the ship's movement. On the contrary, record evidence establishes that there was no irregular ship movement at the time Plaintiff fell. Notwithstanding, even if there was ship movement at the

time of Plaintiff's fall, a court in this District found that the risks of ice skating onboard a ship are open and obvious for which defendant has no duty to warn. *Kulakowski v. Royal Caribbean Cruises, Ltd.,* No. 16-21375-CIV, 2017 WL 237642, at *2 (S.D. Fla. Jan. 18, 2017).

> ii. The ice skating equipment did not create a dangerous condition as the record evidence is devoid of any evidence establishing any defect with Plaintiff's skates or their laces at the time of Plaintiff's incident.

Second, Plaintiff alleges that the condition of the skates he was wearing was such that they constituted a dangerous condition and caused his fall. [D.E. 1, ¶14, 18, 21, 30, 32, 38 and 50(e)-(g), (i) and (o)]. However, prior to each all skate session, Ice Cast staff visually inspected each pair of skates for any defects or damage prior to handing them to passengers, such as Plaintiff, [D.E. 97; Exhibit 3; Noel dep. 169:5-21]. If defects were found on any skates, those skates would have been discarded, and new skates would have been ordered to replace them. [D.E. 97; Exhibit 3; Noel dep. 33:2-5]. Additionally, if there were laces that were "broken" or "worn out" Royal Caribbean maintains extra pairs of new laces onboard to replace any deficient laces. [D.E. 96; Exhibit 2; Campos dep.106 20-24] [D.E. 97; Exhibit 3; Noel dep. 262:7-21]. Even Plaintiff himself acknowledged there were no defects with the ice skating equipment. [D.E. 99; Exhibit 5; Excerpt; p.3] [1]; [D.E. 100; Exhibit 6; Guest Injury Statement signed on June 20,

---

[1] We anticipate Plaintiff will argue that the information contained on Page 3 of the Excerpt from the accident report prepared by David Ferrie was provided through translation by Dr. Abel Rivera rather than provided directly by Plaintiff himself. However, Dr. Rivera testified that he is from Cartagena, Colombia and he speaks Spanish. [D.E. 101; Exhibit 7; Deposition of Dr. Abel Rivera "Rivera dep." 11:19; 22:25; 23:1. Further, he testified that in his line of work, he interacts with patients who may be unable to speak English, but following an incident may need to provide information during the investigation process regarding how the incident occurred. [D.E. 101; Exhibit 7; Rivera dep. 89:2-8; 98:16-20; 100:15-16,18-24]. Dr. Rivera testified that it is common practice for him to perform translation in those situations, [D.E. 101; Exhibit 7; Rivera dep. 89:11-13; 98:13], and in translating to English he would have maintained the integrity of what the patients told him in Spanish. [D.E. 101; Exhibit 7; Rivera dep. 99:6-10, 13-18]. Moreover, Dr. Rivera testified that he would have done so in Plaintiff's case [D.E. 101; Exhibit

2016; p. 2]. Plaintiff requested the skates worn at the time of his fall, [D.E.95; Exhibit 1; Lebron dep. 91:15-23], and he laced his own skates. [D.E. 95; Exhibit 1; Lebron dep.73:15-16]. Not once, however, did Plaintiff notify any Royal Caribbean employee of any issue with the condition of his skates or the laces on the skates, nor did he request a different pair prior to entering the ice-skating rink. [D.E. 95; Exhibit 1; Lebron dep.79:19-19; 80:10-11]. Further, Plaintiff did not report any problems with his ice skates or any concerns regarding the quality of the ice or the ice rink to anyone at Royal Caribbean prior to his fall. [D.E. 95; Exhibit 1; Lebron dep.106:15-18]. Moreover, following his fall, Plaintiff did not inform Royal Caribbean employees of any defects with the ice skates worn at the time of his fall. [D.E. 98; Exhibit 4; Ferrie dep. 21:14-22] [D.E. 99; Exhibit 5; Excerpt; p.3] [D.E. 100; Exhibit 6; Guest Injury Statement signed on June 20, 2016; p. 2] [D.E. 97; Exhibit 3; Noel dep. 23:25; 24:1-20; 169:1-25; 170:1-11; 274:7-10, 12-16; 22-25; 275:6-8, 16-19; 276:13-17, 20-25; 277:1, 4-11; 280:8-17] [D.E. 103, Exhibit 9, Composite 3 photographs of the subject skates, pp.1-3].

Instead, Plaintiff repeatedly informed the investigating safety officer, David Ferrie, that he fell as a result of trying to prevent his daughter from falling. [D.E. 99; Exhibit 5; Excerpt; p.3] [D.E. 100; Exhibit 6; Guest Injury Statement signed on June 20, 2016; p. 2]. Mr. Ferrie specifically asked Plaintiff whether there were any issues with the equipment he was using, including the subject skates, and Plaintiff replied "no." [D.E. 99; Exhibit 5; Excerpt; p.3]. In addition, following Plaintiff's fall, the skates worn by Plaintiff were inspected on three separate occasions by three Royal Caribbean employees and no defects or deficiencies were found. [D.E. 97; Exhibit 3; Noel dep. 280:8-17]. The record evidence is insufficient to establish that the skates Plaintiff was wearing at the time of his fall were defective or damaged.  Plaintiff has failed to

---

7; Rivera dep. 104:21-23] and the information included on Page 3 of the Excerpt of the accident report is what Plaintiff said. *Id.*

present any evidence to support his claim that the skates he was wearing at the time of the subject incident were damaged or defective such that they constituted a dangerous condition, which caused or contributed to his fall.

    iii.    There is no evidence that the condition of the ice or the ice-skating rink at the time of Plaintiff's incident constituted a dangerous condition

Lastly, Plaintiff alleges that the ice-skating rink and/or the ice itself was not in good condition such that it constituted a dangerous condition, which caused Plaintiff's fall. [D.E.1 ¶15, 29, 31, 36, 37, 40, and 50(a), (e), (g). (l)-(n)]. The record is devoid of any evidence that there were any defects in the ice or any damage to the ice rink that constituted a dangerous condition at the time of Plaintiff's fall. Rather, the record evidence establishes that on the date of the incident, the ice was resurfaced at approximately 4:45PM. [D.E. 102; Exhibit 8; 7-Day Schedule of Activity during Voyage 778] [D.E. 97; Exhibit 3; Noel dep. 251: 6-20]. Thereafter, the ice was inspected at least twice prior to the beginning of all skate sessions – once after it is resurfaced and again before it passengers enter the rink. [D.E. 97; Exhibit 3; Noel dep. 69:17-25; 70:1-3]. Specifically, three members of the Ice Cast staff who were responsible for supervising the all skate sessions on the date of Plaintiff's incident arrived 30 minutes prior to the first all skate session to set up the area and equipment for passengers' use. [D.E. 97; Exhibit 3; Noel dep. 265:3-6, 17-25]. These three Ice Cast staff members also visually inspect the ice prior to the beginning of the first all skate session. [D.E. 97; Exhibit 3; Noel dep. 265:3-6]. Following their inspection, there were no defects or damage to the ice reported to the Studio B Manager. [D.E. 97; Exhibit 3; Noel dep. 266:20-23]. Moreover, after Plaintiff's fall, the Studio B manager, the Ice Cast Staff, and Chief Safety officer, on separate occasions, inspected the area where Plaintiff fell and determined found no defect, dirt, or debris in the area. [D.E. 98; Exhibit 4; Ferrie dep.

25:4-12] [D.E. 97; Exhibit 3; Noel dep. 278:10-16, 19-21; 280:8-17].[2] As Plaintiff has failed to establish that there was any defect with the ice or the ice-skating rink at the time of his alleged fall, he cannot establish the existence of a dangerous condition.

### B. There is no evidence that Royal Caribbean had actual or constructive notice of the alleged dangerous condition

Moreover, it is well-settled law that a shipowner's duty to its passengers is "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, No. 14-13721, 2015 U.S. App. LEXIS 20131, 2015 WL 7351676, at *5 (11th Cir. Nov. 20, 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959)). The applicable standard of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Courts routinely grant summary judgment in a defendant's favor when a plaintiff fails to adduce evidence on the issue of notice. *See Taiariol,* at *11 (citing *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) ("Because Plaintiff has failed to cite any evidence in the record showing that [Defendant] had actual or constructive notice of the risk-creating condition alleged in the complaint . . . summary judgment in favor of [Defendant] is appropriate in this matter.")); *Thomas v. NCL (Bahamas) Ltd.*, No. 13-24682-CIV, 2014 U.S. Dist. LEXIS 110547, 2014 WL 3919914, at *4 (S.D. Fla. Aug. 11, 2014) (granting summary judgment where "[t]he unrefuted evidence in the record instead indicates a lack of actual or constructive notice"); *Cohen v.*

---

[2] Plaintiff testified that his shirt was black after his fall because of the dirtiness of the ice, [D.E. 95; Exhibit 1; Lebron dep.104:24-25; 105:1-2]. However, the shipboard medical records, his signed Guest Injury Statement, and the Accident Report are devoid of any evidence of dirt or mud on the ice rink or on Plaintiff's attire for that matter. Further, a plain review of the CCTV video footage and the video footage taken by Plaintiff's wife demonstrate Plaintiff was wearing a white shirt and there was no evidence of dirt as now claimed by Plaintiff. [D.E.94; Motion for Leave to Conventionally File video footage of incident taken by Plaintiff's wife] [D.E.79; USB Thumb drive containing CCTV footage of the incident; 11:17:35-11:19:01 pm].

*Carnival Corp.,* 945 F. Supp. 2d 1351, 1355(S.D. Fla 2013) (granting summary judgment where plaintiff "presented no evidence that [defendant] had actual or constructive notice of the alleged risk-creating condition, "noting such evidence could include "a record of any accident reports, passenger comment reviews or forms, or reports from safety inspections alerting [defendant] of any potential safety concern"). Courts have also found that at this stage of disposition, "mere implication of actual or constructive notice is insufficient to survive summary judgment." *Taiariol,* at *12 (quoting *Lipkin*, 93 F. Supp. 3d at 1323 (citation omitted)); *see also Thomas*, 2014 U.S. Dist. LEXIS 110547, 2014 WL 3919914, at *4; *Cohen*, 945 F. Supp. 2d at 1357 (citing *Adams v. Carnival Corp*., 2009 U.S. Dist. LEXIS 122822, 2009 WL 4907547, at *5 (S.D. Fla. Sept. 29, 2009) (finding plaintiff needed "specific facts" rather than "mere implication" to demonstrate notice)). Furthermore, liability of the shipowner cannot attach in the absence of actual or constructive knowledge of the risk-creating condition. *Pizzino v. NCL (Bahamas) Ltd.,* 2017 U.S. App. LEXIS 18151, at *4-7 (11th Cir. Sept. 20, 2017) (quoting *Keefe,* 867 F.2d at 1322); *Guevara,* 2017 U.S. Dist. LEXIS 162436 at *7 (Williams, J.) (citing *Pizzino*, *2-4). This rule applies even where the defendant created the risk-creating condition. *Pizzino,* 2017 U.S. App. LEXIS 18151 at 5-7.

    In the instant matter, the record is devoid of any evidence that Royal Caribbean had actual notice of the alleged risk-creating condition. There is likewise no evidence that Royal Caribbean should have known of the alleged risk-creating condition. Royal Caribbean anticipates that Plaintiff will attempt to establish notice by referencing prior incidents, which were disclosed in discovery. However, in the Eleventh Circuit, evidence of prior incidents is admissible <u>only</u> when "the proponent of such evidence…show[s] that conditions **substantially similar** to the occurrence caused the prior accidents." *Heath v. Suzuki Motor Corp*., 126 F.3d 1391, 1396 n. 12

(11th Cir. 1997) (emphasis added). Such evidence must be excluded, and cannot be relied on for purposes of refuting a summary judgment motion, where there are **distinguishing facts and where the conditions are not the same or substantially similar to the matter being litigated**. *See Ramirez v. E.I. DuPont De Numours & Co*., 2010 U.S. Dist. LEXIS 97718 (M.D. Fla. Sept. 1, 2010) (emphasis added). The proponent must show: (1) that conditions substantially similar to the occurrence in question caused the other accidents; (2) the other accidents are not too remote in time; *and* (3) the other incident evidence is subject to the reasonable discretion of the trial court as to whether prejudice or confusion of issues which may probably result from the admission of such evidence does not outweigh the probative value of the evidence. *Pinchinat v. Graco Children's Prods*., 2005 U.S. Dist. LEXIS 371810 (M.D. Fla. Apr. 7, 2005). The doctrine applies to "protect the parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury." *Heath*, 126 F.3d at 1396; *see also Sorrels v. NCL (Bahamas), Ltd.*, 2013 U.S. Dist. LEXIS 170890 at *26 (S.D. Fla. 2013) (citing *Tran v. Toyota Motor Corp*., 420 F.3d 1310, 1316 (11th Cir. 2005)).

Here, there is no evidence to establish that any prior incident involving ice skating falls on *Adventure of the Sea* within the three (3) years period prior to the subject incident was substantially similar to the subject incident, or even involved the same alleged risk-creating condition. Royal Caribbean conducted an extensive search of prior incidents in this case for any incident involving a passenger who was injured in any way while ice—skating on *Adventure of the Sea*. Although the search revealed that 22 passengers had fallen while ice skating on the ice rink onboard the Adventure of the Seas in the 3 years prior to Plaintiff's incident, not a single one of the passengers involved in those incidents reported being injured as a result of (a) ship

movement; (b) broken/defective ice skates or laces or (c) a defect or damage in the ice itself. [DE 104; Exhibit 10; Royal Caribbean's Third Supplemental Response to Plaintiff's Fourth Request for Production No. 63; pp. 1-3].

In light of the above, the record is not sufficient to establish that the conditions reported to Royal Caribbean in any of the 22 prior incidents disclosed were substantially similar to the condition alleged to have caused Plaintiff's incident in this matter such that it would be admissible evidence on the issue of notice. As the record does not establish the existence of any prior substantially similar incidents, Plaintiff cannot establish that Royal Caribbean was on notice of the condition, which allegedly caused Plaintiff's incident. Therefore, Royal Caribbean respectfully submits that it is entitled to summary judgment. *See e.g., Keefe*, 867 F.2d at 1322 (finding that a maritime negligence claim requires, as a prerequisite to imposing liability, that the cruise line have actual or constructive notice of the risk-creating condition); *see also Wolf v. Celebrity Cruises, Inc.,* 101 F. Supp. 3d 1298, 1307 (S.D. Fla. 2015) (refusing to impute constructive notice due, in part, to the absence of any accident reports or negative passenger complaints regarding the dangerous condition alleged); *Groves v. Royal Caribbean Cruises, Ltd.*, 2010 U.S. Dist. LEXIS 145815, *7 (S.D. Fla. Dec. 8, 2010) ("There is also no evidence of other similar accidents, which could put Defendant on notice. In other words, Plaintiff provides no facts to show that Defendant had notice . . . ."). Notwithstanding, notice only triggers a duty to warn and in this instance the Plaintiff was repeatedly warned of the possible dangers of ice skating.

### C. Plaintiff's failure to warn claims must be dismissed

Plaintiff's failure to warn claims are premised on the following allegations: that "there were no warning signs alerting passengers of the danger of skating," that "without heed or

warning, Plaintiff fell while participating in the skating activity due to the ship's irregular movement, faulty skating equipment and deteriorated ice skating rink" and that "there was no verbal warning given to alert passengers of the dangers of skating." [D.E.1¶22-24]. There is no evidence to support Plaintiff's failure to warn claims. Rather, the evidence establishes that three members of the professional Ice Cast staff were present during each all skate session, distributing waivers to passengers, providing instruction and answering questions raised by participants, and monitoring the participants while they are skating on the rink. [D.E. 97; Exhibit 3; Noel dep. 43:21-23; 44: 5-8; 264:6-14; 265:3-6; 267:1-12] [D.E. 96; Exhibit 2; Campos dep.35: 4-8]. Further, while Studio B is open for all skate sessions, a safety and instructional video providing passengers with instructions regarding the required safety equipment, the rules for the ice-skating rink, and a visual demonstration of how to lace the ice skates is played on loop on video monitors located in various locations throughout Studio B. [D.E.93; Motion for Leave to Conventionally File Safety and Instructional Video] [D.E.97; Exhibit 3; Noel dep. 263:3-21] [D.E. 96; Exhibit 2; Campos dep. 109:5-10]. Further, Royal Caribbean provides passengers with a waiver of liability, in both English and Spanish, informing them of the risks associated with ice skating and requires that passengers initial the waiver in 8 areas and sign it the bottom before they are allowed to participate in an all skate session. [D.E. 96; Exhibit 2; Campos dep. 50:17-23; 64:1-3] [D.E. 97; Exhibit 3; Noel dep.143:9-12] [D.E. 110; Exhibit 16; Waiver of Liability signed by Plaintiff] [D.E. 111; Exhibit 17; English version of Waiver of Liability]. In fact, Plaintiff signed a waiver of liability, in his native language of Spanish, acknowledging the risks associated with ice skating prior to participating in the ice skating activity on June 20, 2016. [D.E. 95; Exhibit 1; Lebron dep. 64:20-21, 23-24; 65:1-2, 17-25; 66:1-21] [D.E. 96; Exhibit 2, Campos dep. 63:4-10, 17-19]; [D.E. 110; Exhibit 16; Waiver of Liability signed by Plaintiff]. As

Plaintiff has failed to establish his failure to warn claims, Royal Caribbean respectfully submits that it is entitled to summary judgment.

### D. The alleged dangerous condition was open and obvious as a matter of law

Notwithstanding the above, summary judgment is also warranted as the alleged risk-creating condition was open and obvious as a matter of law, such that Royal Caribbean had no duty to warn Plaintiff of it. While the law typically requires a vessel owner to warn passengers of dangerous conditions of which it knew or should have known, there is no requirement to warn of dangers that are open and obvious. *Taiariol,* at *8 (citing *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 730 (11th Cir. 2015)); *see also Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013) ("[T]here is no duty to warn of dangers that [are] of an obvious and apparent nature.") (internal quotation marks omitted). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lugo*, 2015 U.S. Dist. LEXIS 173398, 2015 WL 9583280, at *4 (quoting *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernible through common sense and the ordinary use of eyesight")). Whether a danger is open and obvious is determined from an objective, not subjective, point of view. *Flaherty v. Royal Caribbean Cruises, Ltd*., No. 15-22295, 2015 U.S. Dist. LEXIS 165485, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015) (internal quotation and citation omitted); *John Morrell & Co. v. Royal Caribbean Cruises, Ltd*., 534 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008) ("Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed."). Moreover, a court in this District found that the risks of ice skating onboard a ship are open and obvious for which defendant has no duty to warn. *Kulakowski v. Royal Caribbean Cruises, Ltd.,* No. 16-21375-CIV, 2017 WL 237642, at *2 (S.D. Fla. Jan. 18, 2017). In *Kulakowski*, the plaintiff, who was

represented by the same counsel representing Lebron, alleged that she sustained injuries while ice skating onboard defendant's cruise ship. *Id.* The court found, however, that the risk of falling due to ship movement is an open and obvious condition of ice skating aboard a ship. *Id.* Similar to the plaintiff in *Kulakowski,* Plaintiff is represented by the same counsel and he alleges to have fallen and injured himself while ice skating onboard a ship. Plaintiff, however, as a matter of fact, was aware that he was ice skating on a moving ship and thus was actually aware of the dangers associated with falling from ship movement. *Kulakowski,* No. 16-21375-CIV, 2017 WL 237642, at *2.

Further, Plaintiff was actually aware of the risks associated with ice-skating. [D.E. 95; Exhibit 1; Lebron dep.39:22-23, 25]. Taking Plaintiff's testimony as true, Plaintiff was an experienced skater who appreciated the risks associated with skating. At his deposition, he testified that he was a "master rollerblader" and that the rollerblades he used back home laced in a similar fashion to the ice skates he used on the date of the incident. [D.E.95; Exhibit 1; Lebron dep. 37:17-23; 38:13-15]. He also testified that he did not believe ice skating was any different from skating on land (i.e., rollerblading). [D.E. 95; Exhibit 1; Lebron dep. 71:7-10; 85:15-18]. Further, he conceded that knew the right skate fit loosely on his feet the minute he stepped onto the ice, but continued skating without ever asking for a new pair. [D.E.95; Exhibit 1; Lebron dep. 37:17-23; 97:3-6, 11-15]. Instead, he continued to skate for approximately 12 minutes prior to falling. [D.E.79; USB Thumb drive containing CCTV footage of the incident; 11:05:54-11:17:35pm]. Notwithstanding Plaintiff's level of expertise with skating, a reasonable person through the ordinary use of his or her senses would have realized and appreciated the danger of falling if skates were not properly laced and/or were ill fitting.

Furthermore, Plaintiff alleges that after he fell his shirt was black from the dirtiness of the ice. [D.E. 95; Exhibit 1; Lebron dep.104:24-25; 105:1-2]. Although Royal Caribbean denies such allegation, even if the ice were dirty or defective in any way, Plaintiff skated on the ice for approximately 12 minutes prior to his fall. [D.E.79; USB Thumb drive containing CCTV footage of the incident; 11:05:54-11:17:35pm]. Within 12 minutes, a reasonable person using his or her senses would have realized and appreciated the danger of ice skating on ice containing dirt, defects, and/or grooves, such that the person would avoided those defects.

Plaintiff indisputably knew and appreciated the danger of possibly falling and injuring himself. Nonetheless, Plaintiff proceeded to skate. [D.E. 95; Exhibit 1; Lebron dep. 97:1] [D.E.79; USB Thumb drive containing CCTV footage of the incident; 11:05:53pm]. The record clearly establishes that a reasonable person through the ordinary use of his or her senses should have realized and appreciated that falling and possibly injuring oneself is a likely risk associated with ice skating. Further, the risk of falling and injuring oneself while knowingly wearing "loose fitting skates" should be especially readily apparent to a reasonable person through the ordinary use of his or her senses. As the record establishes that the danger associated with ice skating was open and obvious as a matter of law, Royal Caribbean respectfully submits that it had no duty to warn summary judgment should be granted in its favor.

### E. There is no evidence to support the remaining allegations of negligence

In addition to Plaintiff's failure to warn claim, Plaintiff alleges a laundry list of allegations of duties owed (and breaches thereof), which are unsupported by the record evidence. For example, Plaintiff alleges that Royal Caribbean failed to properly train and/or supervise its staff and/or that the subject skating rink was understaffed. [D.E. 1¶ 44, 45, and 50(i)-(k)]. However, the record is completely devoid of any evidence to support these allegations. The

Studio B manager, Ron Noel, testified that crewmembers used a custom ice resurfacer machine, the Model 3B machine, to resurface the ice on the date of Plaintiff's fall and once the ice is resurfaced using the machine, the crewmembers visually inspect the ice to ensure that there are no defects or damage to the ice. [D.E. 97; Exhibit 3; Noel dep.69:17-18]. Moreover, the crewmembers responsible for operating the Model 3B machine and resurfacing the ice undergo extensive training and are certified to operate the Model 3B machine. [D.E. 97; Exhibit 3; Noel dep. 90: 21-22; 92:11-19; 98:22-25; 99:1-25; 100:21-25; 104:11-17]. Further, the Ice Cast Staff crewmembers possessed extensive years of experience and were adequately trained to maintain the ice rink, maintain the ice skates, and monitor the passengers as they used the ice skating rink. [D.E. 97; Exhibit 3; Noel dep. 169:1-25; 170:1-11; 243:18-25; 245:23-25; 246:1-8; 266:3-9, 11-12; 266:3-9, 14-23]. The record evidence clearly demonstrates that crewmembers acted consistently with their training on the night of the incident.

**F. There is no evidence that Royal Caribbean designed or constructed the ice skating rink and/or the ice skating equipment.**
   i. *There is no evidence that Royal Caribbean designed or constructed the ice skating rink*.

Plaintiff summarily alleges that Defendant participated in the design and/or approved the design and installation of the ice skating rink involved in Plaintiff's accident. [D.E.1 ¶41, 43]. An essential element of a claim for negligent design, however, is that the defendant must have actually designed the subject premises or product. *Rodgers v. Costa Crociere, S.P.A.,* 410 F. App'x 210, 212 (11th Cir. 2010) (affirming summary judgment on negligent design claim in favor of defense where evidence showed defendant did not design stairs or hand rails on board the vessel). There is no record evidence that Royal Caribbean designed, approved and/or installed the ice skating rink involved in Plaintiff's accident. Rather, the record clearly establishes that a third party, AST, designed, constructed, and installed the ice skating rink. [D.E.

106; Exhibit 12; AST Manuals] [D.E. 105; Exhibit 11; Defendant's Responses to Plaintiff's Initial Interrogatories No.22; p.14]. Therefore, contrary to Plaintiff's allegations of Royal Caribbean's involvement in the design, construction, and installation of the ice rink in Studio B, it is undisputed that AST completed all of the design, construction, and installation. Therefore, Royal Caribbean cannot be held liable for negligent design as a matter of law.

      *design*      *ii. There's no evidence that Royal Caribbean designed and/or approved the of the ice skating equipment.*

Similarly, Plaintiff, in a conclusory manner, alleges that Defendant participated in the design and/or approved the design of the ice skating equipment, to wit, ice skates involved in Plaintiff's incident. [D.E.1 ¶ 42]. There is no record evidence that Royal designed or approved the design of the ice skates used onboard *Adventure of the Sea*. Rather, the record clearly establishes that Royal Caribbean purchases its supply of ice skates from a third-party manufacturer, Jackson Skates. [D.E. 105; Exhibit 11; Defendant's Responses to Plaintiff's Initial Interrogatories No.22; p.14]. Yet again, Plaintiff cannot demonstrate that Royal Caribbean "actually designed or approved" the design of the ice skates used onboard Adventure of the Sea as Royal Caribbean purchases said skates from a third-party manufacturer. Royal Caribbean respectfully submits that summary judgment should be granted in its favor as Plaintiff cannot prove his claim for negligent design of the ice skates.

    **G.  Plaintiff cannot establish proximate causation**

No matter the theory of negligence, Plaintiff's entire claim fails because there is no evidence that any act or omission on the part of Royal Caribbean proximately caused Plaintiff's incident and/or injuries. Causation is an essential element of a maritime negligence claim. *See Isbell*, 462 F. Supp. 2d at 1238; *Petitt v. Celebrity Cruises*, 153 F. Supp. 2d 240 (S.D.N.Y. 2001); *see also Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992); *John Morrell & Co. v.*

*Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1353 (S.D. Fla. 2008). Proximate cause is a "reasonably close causal connection between the [defendant's] conduct and the resulting injury." *Vollman v. Royal Caribbean Cruises Ltd*, 2011 U.S. Dist. Lexis 157347 *15 (S.D. Fla. 2011). In other words, there must be a natural, direct, and continuous sequence between the negligent act or omission and the plaintiff's injury that it can be reasonably said that but for the negligent act or omission the injury would not have occurred. *See De Jesus Palma, v. BP Products of North America, Inc.,* 594 F. Supp. 2d 1306 (S.D. Fla. 2009).

The record is devoid of any evidence that an act or omission on Royal Caribbean's part caused Plaintiff's injuries. Plaintiff alleges that he "without heed or warning, he fell while participating in the skating activity due to the ships(sic) irregular movement, faulty skating equipment and deteriorated ice skating rink. [D.E.1 ¶23]. The evidence in this case, however, is that Plaintiff merely lost his balance as he was skating hand-in hand with his daughter while he attempted to prevent her from falling. [D.E. 99; Exhibit 5; Excerpt from Accident Report Prepared by David Ferrie "Excerpt"; p.3] [D.E.79; USB Thumb drive containing CCTV footage of the incident; 11:17:36pm] [D.E. 100, Exhibit 6, Guest Injury Statement signed by Plaintiff on June 20, 2016]. In fact, immediately following the incident, Plaintiff himself stated that there were no problems with the skating equipment, he simply lost his balance and fell. [D.E. 99; Exhibit 5; Excerpt; p.3] [D.E. 100, Exhibit 6, Guest Injury Statement signed by Plaintiff on June 20, 2016]. Plaintiff's assertion that he fell as a result of irregular movement, faulty equipment, and deteriorated ice skating rink was alleged only after he retained counsel and instituted this action. [D.E.1 ¶ 23].

WHEREFORE, Royal Caribbean respectfully requests this Honorable Court enter an order granting summary judgment in its favor, and for all further relief this Court deems just and proper.

Dated: November 13, 2017
Miami, Florida

                                 Respectfully submitted,

                                 **FOREMAN FRIEDMAN, P.A.**
By: */s/Rachael Mitchell Fagenson, Esq.*
                                 Darren W. Friedman Esq. (FBN 146765)
                                 dfriedman@fflegal.com
                                 Rachael M Fagenson, Esq. (FBN 91868)
                                 rmitchell@fflegal.com
                                 Sherri-Ann Grant-Clarke, Esq. (FBN: 111999)
                                 sgrant@fflegal.com
                                 One Biscayne Tower, Suite 2300
                                 2 South Biscayne Boulevard
                                 Miami, FL 33131
                                 Tel: 305-358-6555/Fax: 305-374-9077
                                 Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Email on this 13th day of November, 2017 on: see attached Service List.

                                 By: */s/Rachael Mitchell Fagenson, Esq.*
                                       Rachael Mitchell Fagenson, Esq.

## SERVICE LIST

CASE NO: 1:16-cv-24687-WILLIAMS/Simonton

Spencer Marc Aronfeld, Esq.
aronfeld@aronfeld.com
Matthias Hayashi, Esq.
mhayashi@aronfeld.com
Michelle Hardin, Esq.
mhardin@aronfeld.com
blozano@aronfeld.com
cleather@aronfeld.com
slouis@aronfeld.com
mrodriguez@aronfeld.com
ARONFELD TRIAL LAWYERS
3132 Ponce de Leon Boulevard
Coral Gables, Florida 33134
Tel: 305-441-0440/Fax: 305-441-0198
Counsel for Plaintiff

Darren W. Friedman, Esq.
dfriedman@fflegal.com
sargy@fflegal.com
Rachael M Fagenson, Esq.
rmitchell@fflegal.com
sgrant@fflegal.com
sargy@fflegal.com
lschrader@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower – Suite #2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-6555/ Fax: 305-374-9077
Counsel for Defendant