EDGARDO LEBRON,

     **Plaintiff,**

v.

ROYAL CARIBBEAN CRUISES,
LTD.,

     **Defendant.**

                          /

## ORDER RE: PLAINTIFF'S OMNIBUS MOTION TO STRIKE, EXCLUDE AND/OR LIMIT DEFENDANT'S EXPERTS' OPINIONS AND "REBUTTAL" OPINIONS

This matter came before the Court upon Plaintiff's Omnibus Motion to Strike, Exclude and/or Limit Defendant's Experts' Opinions and "Rebuttal" Opinions, ECF No. [128]. The Defendant has filed a Response to the Motion, ECF No. [159]. The Plaintiff has not filed a Reply and the time for doing so has elapsed. The Honorable Kathleen M. Williams, United States District Judge, has referred the Motion to the undersigned Magistrate Judge, ECF No. [154]. For the following reasons, the Motion is Denied.

    I.     **BACKGROUND**

This personal injury action was initiated when Plaintiff Edgardo Lebron ("Lebron") filed a Complaint against Defendant Royal Caribbean Cruises, Ltd., ("RCL") alleging negligence related to injuries sustained by Plaintiff when he fell while ice skating aboard the Adventure of the Seas, a cruise ship operated by Defendant RCL, ECF No. [1].

In its Answer, the Defendant has generally denied the substantive allegations in the Complaint and has raised several affirmative defenses including, comparative negligence and waiver of liability by the Plaintiff, ECF No. [67].

II.    **MOTION TO STRIKE**

In the Motion pending before the Court, the Plaintiff seeks to strike or limit the opinions of Defendant's expert witness David Wescott and Defendant's "rebuttal" expert witness Dr. Joseph Sala, ECF No. [128].  Plaintiff contends that the expert rebuttal opinions of Dr. Joseph Sala should be excluded because those opinions are not truly rebuttal opinions to Plaintiff's experts Terry MacLaughlin ("MacLaughlin") and Dr. Ying Lu.  Plaintiff additionally contends that several of David Wescott's expert opinions should be excluded because those opinions fail to satisfy the *Daubert* standard because they are not supported by a factual basis.

In Response, Defendant contends that Dr. Sala's opinions, as expressed in his eighteen-page report, properly rebut both the opinions of Terry MacLaughlin and Dr. Lu, ECF No. [159].  Defendant further contends that, if the Court determines that Dr. Sala's opinions are not proper rebuttal opinions, those opinions should still be admitted as direct expert opinions.  Defendant asserts that admission of those opinions as direct expert opinions would be appropriate because Plaintiff was not harmed by any tardy disclosure because Plaintiff had the opportunity to, and did, depose Dr. Sala for over five hours.[1]  As to the opinions of David Wescott, Defendant argues that those opinions are supported by the facts in the record, and asserts that because Plaintiff has not challenged Wescott's qualifications or whether his opinions would be helpful to the trier of fact, Plaintiff's request to exclude his opinions should be denied.

III.   **LEGAL FRAMEWORK FOR RULE 26 REBUTTAL WITNESSES**

A.    *Rebuttal Report Pursuant to Fed. R. Civ. P. 26*

Rule 26(a) provides that rebuttal experts may be permitted to present evidence that is intended to contradict or rebut evidence on the same subject matter identified by

---

[1] Dr. Sala and MacLaughlin's rebuttal reports were both disclosed on October 25, 2017, pursuant to the Court's schedule.  Dr. Sala was deposed on November 10, 2017, in advance of the deadline for the Parties' dispositive motions.

2

an initial expert witness. Fed. R. Civ. P 26(a)(2)(D)(ii). "Courts are empowered to exercise their discretion and judgment in determining if a rebuttal expert report addresses the same subject matter as the opposing party's initial expert report." *ITT Corp. v. Xylem Grp.*, LLC, No. 1:11-CV-3669-WSD, 2012 WL 12871632, at *3 (N.D. Ga. Oct. 15, 2012); *see 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217-18 (10th Cir. 2004); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 601 (9th Cir. 1991). Moreover, the applicable Rule of Civil Procedure and relevant case law makes clear that the training and expertise of a rebuttal witness need not be exactly the same of the witness whose opinions are being rebutted. Rather, Rule 26 only requires that the evidence contradict or rebut evidence on the "same subject matter." Fed. R. Civ. P. 26(a)(2)(D)(ii).[2] Courts in this district have held that rebuttal opinions are permitted when they directly address an assertion raised by an opponent's experts. *In re Trasylol Prods. Liab. Litig.*, No. 09-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010). Thus, a rebuttal opinion should not be used to advance new arguments or present new evidence. *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013).

B.  *Rule 37 Exclusion of Witnesses*

Where a party fails to provide information as required under Rule 26(a), Rule 37 authorizes the Court to sanction that party. Fed. R. Civ. P. 37(c). Under Rule 37, if a party fails to comply with Rule 26, "the party is not allowed to use that information or witness

---

[2] As observed by the court in *Plantation Pipe Line, Co., v. Associated Elec. & Gas Ins. Serv.* Ltd., 2011 WL 13143562 *2 (N.D. Ga. No. 10, 2011) neither the Rules nor the Eleventh Circuit has defined or explained the term "same subject matter."  Several courts have held that the term "same subject matter" should be construed broadly. *See Armstrong v. I–Behavior Inc.*, No. 11–cv–03340–WJM–BNB, 2013 WL 2419794, at *4 (D. Colo. June 3, 2013) (declining to confine the term in an overly restrictive manner); *1550 Brickell Assocs. v. QBE Ins. Corp.*, No. 07–22283–CIV, 2010 WL 1947636, at *2 (S.D. Fla. May 13, 2010) (agreeing with the concept that the term should not be so narrowly construed as to impose additional restrictions on the parties); *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002) (declining to construe the term narrowly on the basis that doing so would "impose an additional restriction on the parties that is not included in the Rules").

to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"When a party claims that it has substantial justification for its actions, the court should ask whether reasonable people could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." *Affiliati Network, Inc., v. Wanamaker*, No. 1:16-cv-24097-UU, 2-17 WL 8784850 (S.D. Fla. Aug. 9, 2010) (citing *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001) (internal citation and quotation omitted). "A party's failure to properly disclose an expert," including improper designation of an expert under Rule 26(a)(2)(D)(ii), "is harmless when no prejudice results to the opposing party." *Id.* citing *Leaks v. Target Corp.*, No. CV414-106, 2015 WL 4092450, at *4 (S.D. Ga. July 6, 2015) (internal citation omitted).

IV. <u>ANALYSIS</u>

A. *Dr. Sala Is a Proper Rebuttal Witness to Terry MacLaughlin's Opinions*

Plaintiff first contends that Dr. Sala has not been offered as a proper rebuttal witness to Plaintiff's expert MacLaughlin because Dr. Sala's Report does not discuss MacLaughlin's report or conclusions at all and does not address MacLaughlin's examination findings. Plaintiff thus asserts that Dr. Sala's opinions are not rebuttal opinions because they fail to directly address an assertion raised by an opponent's expert. Plaintiff further argues that this conclusion is demonstrated by the fact that Dr. Sala was not even aware that he was going to be called as a rebuttal witness to MacLaughlin. For the following reasons, the undersigned concludes that this argument is without merit.

Plaintiff retained expert Terry MacLaughlin, to testify regarding the conditions of the ice rink, ice skates, and RCL's procedures regarding the operation of the ice rink, and how those conditions and policies contributed and/or caused Lebron's fall. Terry MacLaughlin issued an initial Report on September 5, 2017 and a Supplemental Report on September 25, 2017 wherein he discussed the conditions of the ice skating rink aboard the cruise ship when he inspected it after Lebron's incident, and further provided opinions regarding the cause of Lebron's fall related to the rink conditions, ECF No. [127-1].[3]

---

[3] Among other things, MacLaughlin's initial Report concluded the following:

> The accident Mr. Lebron had was most likely caused by a combination of improperly fitted rental skates, unsafe ice conditions such as wet, soft ice, dirt or sand on top of the ice surface and gouges in the ice caused by poor operation of the ice resurfacer or the ice covering.

ECF No. [127-1] at 4. The Report further states:

> I believe that the injury sustained by Mr. Lebron can be directly connected to the lack of training and improper procedures of the employees responsible for fitting the rental skates that Mr. Lebron was issued prior to his fall. . .
>
> I did review the training video that RCCL provided and found that it did not adequately show how to lace skates properly . . . .
>
> Furthermore, I believe the video depicted the hazards to skating in a comical, unprofessional manner which would cause viewers to not take the risk of skating seriously.

ECF No. [127-1] at 5. Further, the Report concluded:

> The combination of improperly fitted ice skates, wet, soft and dirty ice conditions created by improper use of the resurfacer and excess heat in Studio B created a hazard for skaters that is below ice skating industry standards.

ECF No. [127-1] at 5. The Report also discussed how certain things fell below the minimum standard of safety for public ice skating for the ice skating industry including frayed or split laces on the rental ice skates, ECF No. [127-1] at 2.

In a Report dated October 25, 2017, Joseph B. Sala, Ph.D., a Principal Scientist at Exponent and the Director of the Human Factors Practice, as Defendant's expert witness, opined as to the cause of Mr. Lebron's accident based upon an evaluation of human factors, ECF No. [128-1] at 1-2. Among the materials provided to Dr. Sala for his review of the case were MacLaughlin's Reports, ECF No. [128-1] at 19, which Dr. Sala reviewed prior to issuing his own expert report, ECF No. [128-3] at 11.[4] In his Report, Dr. Sala concluded, among other things, "…there is no scientific reason to believe that Mr. Lebron's fall or inability to recover from his fall was caused by the lacing of his ice skate." ECF No. [128-1] at 18.

In his human factor analysis, Dr. Sala discussed the physical challenges presented in ice skating, the safety information provided to guests by RCL, and Lebron's testimony regarding the safety information given to him and his prior skating experience, ECF No. [128-1] at 13-14. The Report also discussed Lebron's awareness of the need to lace his skates to the top of his boot and Lebron's failure to seek assistance for the "defective" ice skates prior to and during his ice skating session, ECF No. [128-1] at 14. The Report discusses the lack of evidence to corroborate Lebron's allegation that the laces were in the condition Lebron described, and the condition of the skates themselves, ECF No. [128-1] at 15. The Report cites a data base that tracks ice skating falls and whether faulty lacing was involved those falls, ECF No. [128-1] at 16.

Dr. Sala's Report thus generally offers opinions on whether the defective lacing on the skates worn by Lebron was the cause of Lebron's fall, whether the safety training

---

[4] Dr. Sala testified that he was unable to review MacLaughlin's rebuttal report prior to issuing his own report because the expert rebuttal reports were due on the same day, ECF No. [128-3] at 163. The Scheduling Order in this action provided that the Plaintiff shall disclose experts on or before September 5, 2017, Defendant to disclose experts by September 19, 2017, and the Parties to exchange rebuttal expert witness summaries and reports by October 10, 2017, ECF No. [16] at 2. Due to Hurricane Irma, the Court extended the time for expert disclosures for the Plaintiff until September 25, 2017, for the Defendant until October 6, 2017, and for rebuttal witness until October 25, 2017, ECF No. [57]. The Parties' discovery deadline was set for October 27, 2017, ECF No. [16] at 2.

video was adequate, and whether Lebron should have observed the defective laces and sought assistance related to the lacing of his skates based on his prior in-line skating experience. MacLaughlin offered similar opinions on how frayed laces on Lebron's skates contributed to his fall, the failure of the ship employees to adequately give Lebron instruction on how to lace his skates, and the inadequacy of the training video from RCL on how to lace skates properly, ECF No. [119-8] at 2. Therefore, Dr. Sala clearly offers opinions on the same subjects as MacLaughlin and rebuts many of the exact opinions that MacLaughlin advances for the cause of Lebron's fall.

The Plaintiff is correct that Dr. Sala does not mention MacLaughlin or MacLaughlin's opinions specifically in his Report. However, there is no reason to conclude that Dr. Sala's opinions about the skates' laces do not directly rebut the opinions offered by MacLaughlin on the same subject matter. Therefore, Dr. Sala is a proper rebuttal witness to the extent that his opinions attempt to contradict or rebut the opinions offered by MacLaughlin regarding the laces on the ice skates. In addition, the Plaintiff fails to point to any one of Dr. Sala's opinions that solely support the Defendant's case, and could not reasonably viewed as rebutting the Plaintiff's case in chief and the Plaintiff's theory of the case. This is particularly true here where Dr. Sala's opinions are, in reality, merely the inverse of the opinions of the Plaintiff's expert's opinions. In other words, it is not that Dr. Sala is presenting any new theories that haven't already been explored by the Parties, but deal with the very things that Plaintiff's expert puts forth as the cause of Lebron's fall, *e.g.* improper lacing of the skate boot, the ice skating experience of Lebron, and the lack of proper or adequate warning and/or instructions from the Defendant.

Moreover, the Plaintiff's arguments fail to consider the relative positions and burden of the Parties in this case. In this negligence action, it is the Plaintiff's burden to demonstrate some wrongdoing by Defendant RCL that constitutes a breach of duty,

proximate cause, and injury or actual damages. *See Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 2018 WL 3083730, *3 (11th Cir. 2018) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) and stating "To prevail on a maritime negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.'") Thus, although it is true that Dr. Sala identified human factors that may have caused Lebron's fall as an alternative to Plaintiff's expert's opinions, opining on alternative theories does not convert a rebuttal expert report into an affirmative one.  Nor does opining on alternative theories warrant exclusion. *See Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277-MARTINEZ-GOODMAN, 2016 WL 7507848 *13, (S.D. Fla. Aug. 1, 2016) (citing J*ohnson v. PetSmart, Inc.*, 2007 WL 3024029, *1-2 (M.D. Fla. Oct. 15, 2007) for the proposition that a rebuttal expert may rebut an expert opinion regarding maintenance and damage causation by including contradictory evidence and alternative theories as to causation.).  It is for this reason that the Plaintiff's reliance on *In re Trasylol Prods. Liab. Litig.*, No. 09-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010) is misplaced. In that case, the Court concluded that the plaintiff sought to improperly designate an expert witness as a "rebuttal" witness where that witness actually filled in the gap in evidence as to how the administration of the drug at issue led to the death of a patient, and thus was not truly rebuttal but went to the plaintiff's case in chief. *Id* .at *2. In contrast, here, Defendant properly seeks to produce credible evidence which tends to discredit or rebut the Plaintiff's evidence presented for his case in chief, and thus the opinions are admissible.

Similarly, *Leaks v. Target Corp.*, No. CV414-106, 2015 WL 4092450, *1, which Plaintiff cites in his Motion, does not assist the Plaintiff.  Plaintiff quotes *Leaks* to illustrate an improper designation of a rebuttal report because the rebuttal report only

contained eight sentences, did not discuss the other expert's report or address his examination findings, and did not impeach or discuss the other experts' conclusions but rather only discussed the purported rebuttal expert's own views on causation, ECF No. [128] at 3.  While the Plaintiff correctly cites certain observations made by the court about the rebuttal report in that case, most significantly the court observed that the initial expert report summarized the injured party's relevant medical history and the examination of that party, whereas the expert report offered in rebuttal only discussed a wholly different cause of the plaintiff's injury, and did not address the "factual underpinnings" of the initial expert's opinion.  *Id.* at *4.  In the case at bar, Dr. Sala's opinions directly challenge the factual underpinnings of MacLaughlin's opinions, even if MacLaughlin is not expressly mentioned in Dr. Sala's Report.  As such, this case us distinguishable from *Leaks*.

Further, in *Leaks*, the court ultimately determined that the late disclosure of the "rebuttal" report was harmless as the opposing party suffered no prejudice because the expert was deposed prior to the close of discovery, thus the opposing party was not able to claim surprise or lack of notice.  The same principle applies to the facts of this case. Assuming *arguendo* that Dr. Sala's report and testimony constitute improper rebuttal evidence, they are still admissible because their late disclosure was harmless as the record fails to demonstrate that the Plaintiff suffered any prejudice as a result.  The opinions expressed by Dr. Sala are arguably rebutted by the initial opinions provided by MacLaughlin, as Dr. Sala's opinions state the opposite of MacLaughlin's opinions, and the Plaintiff has failed to identify which opinions offered by Dr. Sala he has not had an opportunity to rebut based on any tardy disclosure of those opinions.  The Plaintiff has not stated that he seeks to obtain an additional expert to rebut the opinions of Dr. Sala,

or that he is in need of additional time to conduct discovery related to Dr. Sala's opinions. As such, any arguably late disclosure of Dr. Sala's opinions was harmless.[5]

Finally, even if the Court determined that Dr. Sala was not a proper rebuttal witness to MacLaughlin, the Court would still not exclude Dr. Sala as a witness because, as discussed below, Dr. Sala's opinions appropriately rebut the testimony of Dr. Lu, and thus are admissible.

      **B.**     ***Dr. Sala is a Proper Rebuttal Witness to***
                   ***Dr. Ying Lu's Opinions***

Plaintiff contends that Dr. Sala's opinions are not proper rebuttal for Plaintiff's expert Dr. Ying Lu, who is an expert in biomedical engineering with expertise in biomechanics. In a Report dated September 5, 2017, Dr. Ying Lu, Ph.D. analyzed the body kinematics and fall mechanisms related to Mr. Lebron's fall. For similar reasons as those discussed above in relation to MacLaughlin's opinions, Plaintiff's Motion to Exclude Dr. Sala as rebuttal witness to Dr. Lu is denied.

First, Dr. Sala specifically identifies Dr. Lu in his Report and devotes two full paragraphs to challenging her opinions, ECF No. [128-1] at 16-17. Plaintiff does not point to any specific opinions that Dr. Sala advances that are not in rebuttal to Dr. Lu's opinions but rather focuses on the fact that Dr. Sala is an expert in human factors whereas Dr. Lu's expertise is in biomedical engineering and biomechanics. Plaintiff points to Dr. Sala's testimony in his deposition that he was not commenting on the mechanics of the fall itself and how the ankle moved and how the injury occurred, as further evidence of Dr. Sala not being a proper rebuttal witness to Dr. Lu's opinions, ECF No. [128 -1] at 7-8. However, in his deposition, Dr. Sala testified that although he is not an engineer, there was overlap in some of the topics and issues inherently studied

[5] The undersigned does not reach the issue of whether the Defendant was substantially justified in failing to disclose the opinions of Dr. Sala earlier because it is manifest from this record that any belated disclosure was harmless.

between human factors and biomechanics, and further testified that his report included an analysis of how Lebron was moving and how he was interacting at the time of the fall as he was skating around the rink, ECF No. [128-3] at 19, 62-63.  Moreover, there is no requirement that a rebuttal witness's area of expertise match the area of expertise of the opposing party's initial expert. *Northrup v. Werner Enter., Inc.*, No. 8:14–cv–1627–T–27JSS, 2015 WL 4756947, at *3 (M.D. Fla. Aug. 11, 2015). *See also Armstrong v. I–Behavior Inc.*, No. 11–cv–03340–WJM–BNB, 2013 WL 2419794, at *3 (D. Colo. June 3, 2013) (examining holding in *TC Sys., Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002) and observing that strategic decision to use rebuttal expert from different discipline, *e.g.,* engineering rather than accounting not prohibited by applicable rules regarding rebuttal witnesses because both experts opined on the same subject matter).  Thus, because Dr. Sala opined on the same subject matter as Dr. Lu, his opinions are proper rebuttal opinions notwithstanding the fact that his training is in a different discipline than Dr. Lu's.

As to the substance of Dr. Sala's opinions, the Report discusses the opinions of Plaintiff's Expert, Dr. Lu, regarding the significance of Lebron's ice skate not being laced to the top of the boot, ECF No. [128-1] at 16.  The Report also points out areas where Dr. Sala rebuts Dr. Lu's opinions from a human factors perspective, and identifies those areas where he believed Dr. Lu's opinions were inconsistent, ECF No. [128-3] at 148-153. Ultimately, in the Summary of Opinions and Conclusions, Dr. Sala opines that the safety information provided by RCL was reasonable and adequate, that Lebron had sufficient knowledge to appreciate the need for appropriate lacing, that Lebron's inability to recover from his fall was not caused by the lacing of his ice skate, and that Dr. Lu's opinions regarding the significance of the lacing was not supported by the case facts or scientific analyses, ECF No. [128-1] at 18.  Thus, Dr. Sala's opinions and testimony

directly rebut those opinions offered by Dr. Lu, and are thus he is a proper rebuttal witness to Dr. Lu.

Finally, akin to the analysis related to Dr. Sala's rebuttal opinions to MacLaughlin's opinions, the record does not demonstrate, and Plaintiff has failed to point to any harm that he will suffer if Dr. Sala's opinions are admitted as rebuttal opinions to Dr. Lu's opinions. Accordingly, Dr. Sala's opinions and testimony are proper rebuttal to Dr. Lu's opinions and thus are admissible.

V.    LEGAL FRAMEWORK AND ANALYSIS FOR DAUBERT CHALLENGE

A.    *Rule 702*

Federal Evidence Rule 702 governs the admission of expert testimony in federal court, and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). Thus, a Court performs a "gatekeeping role" regarding admissibility of expert testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Eleventh Circuit has set out three requirements that an expert must meet before his opinions may be admitted. *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328 (11th Cir. 2014). First, the expert must be qualified on the matter about which he intends to testify. *Id.,* citing *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th

Cir. 1998). Second, the expert must employ reliable methodology. *Id.*[6] Third, the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue. *Id.*

The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n. 10, (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76, (1987)).

### B.  *Qualifications*

As to the first of these requirements, determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); see also *Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, *14 (E. D. La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 n.10 (5th Cir. 1999), and "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); see also *Martinez v. Altec Indus., Inc.*, 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing*, 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced ... qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity")). After a review of

---

[6]  In *Daubert*, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *Wilson v. Taser Int'l, Inc.*, 303 Fed. Appx. 708, 714 (11th Cir. 2008) (citing *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 595). These factors may guide a district court's reliability inquiry, but the district court ultimately has "broad latitude" as to how it determines reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

the relevant issues and an expert's qualifications, "the determination regarding qualification to testify rests within the district court's discretion." *Clena Investments, Inc.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976) (footnote omitted)).

### C.    *Methodology*

Proposed expert testimony must be supported by appropriate validation, what the Supreme Court has characterized as "good grounds based on what is known." *United States v. Frazier*, 387 F. 3d 1244, 1261 (11th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, (1993)). A court cannot admit an expert who simply states that he used the "scientific method" to reach his conclusions; more is required. *See Hughes v. Kia Motors Corp.*, 766 F.3d 1317 (11th Cir. 2014) (affirming district court's exclusion of expert testimony).

To determine the reliability of an expert's testimony, the Supreme Court identified four factors that district courts should consider: 1) whether the expert's methodology has been tested or is capable of being tested; 2) whether the theory or technique used by the expert has been subjected to peer review and publication; 3) whether there is a known or potential error rate of the methodology; and 4) whether the technique has been generally accepted in the relevant scientific community. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 593–94,(1993). Such factors, however, are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Courts within the Eleventh Circuit have recognized that in cases with non-scientific expert opinions, the *Daubert* factors may not be helpful in determining the reliability of an expert's methodology. See *Regions Bank v. Kaplan*, 8:12–cv–1837–T–17MAP, 2017 WL 1148322, at * 3 (M.D. Fla. Mar. 24, 2017) ("The opinions at issue are not scientific opinions and do not apply scientific techniques or theories; the *Daubert* factors as to reliability are not helpful in determining the reliability of the methodology."); *Clena Invs., Inc.*, 280

F.R.D. at 663 ("Turning to the area of non-scientific, experience-based testimony, while these same criteria may be used to evaluate its reliability, sometimes other factors may prove more useful."). Thus, a "district court has considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (internal quotations and citations omitted).

Further, the proponent of expert testimony need not show that the opinion proffered is scientifically correct, but only, based upon a preponderance of the evidence, that the opinion is reliable. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Although, an expert must know "facts which enable him to express a reasonably accurate conclusion instead of mere conjecture or speculation," absolute certainty is not required. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). Whether this logical basis has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Id. Daubert* requires that the proposed expert testimony be relevant and advance a material aspect of the case. *McDowell v. Brown*, 392 F.3d 1283, 1289-1290 (11th Cir. 2004).

Finally, in assessing the validity of the expert's methodology, the district court may not "make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "The gatekeeper role ... is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (alteration added). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (alteration added). The court's role is limited to analyzing if the evidence is unreliable and

irrelevant "because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison*, 184 F.3d at 1311–12.

        D.     *Helpfulness to the Trier of Fact*

The helpfulness prong of the inquiry requires that an expert's testimony involve matters beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1262. The opinion must also have a "valid scientific connection to the disputed facts in the case." *Daubert*, 509 U.S. at 591. The party offering the expert bears the burden of establishing reliability and helpfulness. *Frazier*, 387 F.3d at 1260. The expert may be qualified and the basis for his opinion may be reliable, but if his opinion is not necessary for resolving the issues in the case, then the opinion is not relevant and should not be admitted. *See id.* The Eleventh Circuit has stated that this prong —"goes primarily to relevance." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 987 (11th Cir. 2016) (citing *Daubert*, 509 U.S., at 591). The basic standard of relevance . . . is a liberal one, but if an expert opinion does not have a valid scientific connection to the pertinent inquiry it should be excluded because there is no fit. *Id.* Stated another way, expert testimony is considered relevant when "it logically advances a material aspect of the proposing party's case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (quotations and citation omitted).

        E.     *David Wescott's Opinions are Admissible as they*
                    *Are Sufficiently Supported by the Facts in the Record*

Plaintiff seeks to exclude the opinions and testimony of Defendant's expert, David Wescott. As correctly noted by Defendant, the Plaintiff has not challenged Wescott's qualifications or whether his opinions would be helpful to the trier of fact, but rather only

seeks to exclude his opinions because Wescott has no factual basis to offer certain of those opinions.[7]

In a Report following a ship inspection on August 16, 2017, David Wescott, CPE, CIT, Managing Partner of All Star Arenas, LLC,[8] assessed the operations of the ice skating rink on the Adventure of the Seas, ECF No. [128-7]. In so doing, Wescott reviewed, among other things, the policies and procedures of RCL and assessed whether those policies and procedures were being adhered to by the staff. Wescott also reviewed the Complaint in this action, several videos, the depositions of Mr. Lebron, David Ferrie, and the Senior Manager for Guest Claims and Litigation, photos of the skates, the Report and Supplemental Report by Terry MacLaughlin, the skate sharpening procedures and log maintained by RCL, the job descriptions of several of the employee positions charged with the operation and safety of the ice skating rink, the Waiver & Release of Liability and Injury Investigative Form that was completed after Lebron was injured, ECF No. [128-7] at 3-5. In addition, the Report reflects that Wescott completed a telephonic interview with Ron Noel, the Production Manager of Studio B, who operated the ice resurfacer on the date of the incident. Generally, in the Report, Mr. Wescott offers rebuttal opinions to MacLaughlin, and concludes that the policies and procedures of the ice rink exceeded industry norms, ECF No. [128-7] at 8.

Plaintiff contends that Wescott has no basis for stating his first opinion that the policies related to the maintenance and care of the skates used in Studio B are well documented and above skating industry standards for the duty of care. Plaintiff further contends that Wescott (and Sala) has no basis for the opinion that the video playing in

---

[7] Notwithstanding that the Plaintiff has not challenged Wescott in these areas, the undersigned, as the gatekeeper for the admissibility of expert testimony, finds that David Wescott is qualified to offer his expert opinions in this case and that those opinions would be helpful to the trier of fact.

[8] "CIT" refers to Certified Ice Technician, ECF No. [128-7] at 10. "CPE" refers to Plant Engineers Certification, ECF No. [127-7] at 7.

the rink area clearly shows how to lace the skates.  Plaintiff next asserts that Wescott's opinion that the temperature that was mentioned as an industry norm was 50 degree Fahrenheit is not true. Finally, Plaintiff argues that Wescott's thirteenth rebuttal opinion regarding whether MacLaughlin should have opined that the ice was wet, dirty and sandy, because the video did not reflect the same, should be excluded because Wescott testified at his deposition that dirt may have been present that could only be seen by the naked eye, ECF No. [128] at 13.  Based upon a thorough review of the record, the undersigned concludes that the Wescott's opinions are sufficiently supported by the record for his opinions to be presented to the trier of fact.

Specifically, Plaintiff first contends that Wescott has no basis for stating his first opinion (which Defendant correctly notes is Wescott's third opinion) that the policies related to the maintenance and care of the skates used in Studio B are well documented and above skating industry standards for duty of care.  Plaintiff takes issue with the fact that the log at issue did not reflect whether the skates that Lebron wore had been sharpened prior to his incident. Thus,  Plaintiff is not contending that the sharpening log did not exist, but questions the sufficiency of that log.  Similarly, Plaintiff criticizes Wescott's opinion because Wescott did not know the level of experience of the RCL crewmember who performed the ice skate sharpening, ECF No. [128] at 10.  However, Wescott's opinion on whether the Defendant's practices and methods related to maintaining the skate sharpening log and whether Defendant's crewmember training met industry standards goes to the weight of his testimony and not the admissibility.[9] *See Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) ("Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require

---

[9] This same analysis applies to Dr. Sala's opinions that Plaintiff seeks to exclude on the same basis.

resolution by the trier of fact."). Thus, to the extent that Plaintiff seeks to exclude Wescott's third opinion, the motion is denied.

Plaintiff next challenges Wescott's sixth rebuttal opinion regarding the appropriate temperature at which the ice should be maintained to meet industry standards, ECF No. [128] at 11. On this issue, Plaintiff contends that Wescott improperly criticized MacLaughlin's opinion as stating that the ice needed to register at 50 degrees Fahrenheit and further that there is not a specific temperature that is sought to be achieved. Plaintiff contends that MacLaughlin's opinion on this issue is consistent with Defendant's Manager's testimony that RCL wanted the temperature to be maintained, and thus argues that Wescott's opinion is not based on the facts of this case. However, again, this challenge goes to the weight and accuracy of Wescott's testimony and not the admissibility of that opinion. To the extent that Plaintiff seeks to demonstrate the inaccuracy of Wescott's opinion on this issue, including whether Wescott incorrectly stated that MacLaughlin's opinion was incorrect, that may be done through vigorous cross examination. Accordingly, the Plaintiff's request to exclude Wescott's opinion and testimony on the correct industry standard for the temperature of the ice as stated by MacLaughlin, and whether that temperature was desired or maintained by RCL, is denied.

Similarly, whether the trier of fact will believe or disbelieve that the ice was wet, dirty, and/or sandy at the time of Lebron's fall, and in turn, credit or discredit Wescott's opinions regarding the same, is also a matter of weight and not admissibility. As such, the Plaintiff's request to exclude Wescott's thirteenth rebuttal opinion regarding Wescott's criticism of MacLaughlin's opinion on whether the ice was dirty, is denied.

In his fourth rebuttal opinion, Wescott states that during his inspection of the ship, the studio B ice skating video was playing on all the TV monitors in the rink area, ECF No. [128-7] at 10, [128-10] at 63. Plaintiff argues that Wescott's opinions regarding whether the instructive video was playing during the time that Lebron was skating is not

predicated upon the facts of the case. Plaintiff is correct that at Wescott's deposition, after he was shown a video of the CCTV video footage of Lebron's fall, Wescott conceded that, at least, some of the monitors visible from the rink during that skating session were not playing the instructional video during that time, ECF No. [128-10] at 57. Yet it remains unclear whether the instructional video was being played on any of the *other* monitors at some point during Lebron's skating session, ECF No. [128-10] at 57-58. In fact, upon further questioning at his deposition, Wescott testified that only five of the monitors were visible on the CCTV footage that captured Lebron's skating session and fall, ECF No. [120-10] at 162, 164. Wescott then testified that when he inspected the ship months after the incident, there were ten monitors, and thus approximately five of the monitors could not be seen in the CCTV video that was shown to him during his deposition. Further, Wescott testified that the people who run "open skate" testified that the safety video is typically playing during the public skating times in Studio B, ECF No. [120-10] at 165.[10] In addition, Ron Noel's testified at his deposition that the instructional video is played during every ice skating session, ECF No. [97-1] at 14. Nonetheless, it appears that, at very least, the video was not playing on all of the monitors on the day of Lebron's fall, unlike the day that Wescott inspected the ship. Thus, although it is a close case as to whether Wescott's opinion on this issue is supported by the facts and data in the record, the undersigned concludes that the opinion is sufficiently reliable given the other testimony in the case. However, the Defendant must to establish a factual predicate at trial for Wescott's opinion that the instructional safety video was playing

---

[10] In opposition to the Plaintiff's Motion to Exclude Wescott's testimony, Defendant argues that Wescott conducted a telephonic interview with Ron Noel the Production Manager of Studio B, and thus could have relied on that interview to conclude that the safety videos were being shown during the ice skating session in which Lebron was injured, ECF No. [159] at 10. However, there is no indication that Noel informed Wescott of that fact prior to Wescott authoring his opinion regarding the videos. Thus, the undersigned does not rely on the Defendant's assertion in assessing the reliability of Wescott's opinion on this issue.

during Lebron's skating session, prior to Wescott being permitted to testify about that video.  Accordingly, the Plaintiff's request to strike Wescott's fourth rebuttal opinion is denied.

VI.     <u>CONCLUSION</u>

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Omnibus Motion to Strike, Exclude and/or Limit Defendant's Experts' Opinions and "Rebuttal" Opinions, ECF No. [128] is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this 26th day of July, 2018.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies via CM/ECF to:
        The Honorable Kathleen M. Williams

        All parties of record