# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 16-24687-CIV-WILLIAMS/SIMONTON

EDGARDO LEBRON,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT FOR FAILURE TO PRODUCE A CORPORATE REPRESENTATIVE WITH ADEQUATE KNOWLEDGE

This matter is before the Court upon Plaintiff's Motion for Sanctions Against Defendant for Failure to Produce a Corporate Representative With Adequate Knowledge of Designated Areas of Inquiry, Or in the Alternative Motion to Compel Corporate Representative Deposition, ECF No. [73]. The Defendant has filed a Response to the Motion, and the Plaintiff has filed a Reply, ECF Nos. [77] [84]. The Honorable Kathleen M. Williams, United States District Judge, has referred all discovery matters to the undersigned Magistrate Judge, ECF No. [16].

For the following reasons, based upon a thorough review of the deposition of the Defendant's Corporate Representative and the record as a whole, the Plaintiff's Motion is Denied.

### I. BACKGROUND

This action was initiated when Plaintiff Edgardo Lebron ("Lebron") filed a complaint against Defendant Royal Caribbean Cruises, Ltd., ("RCL") alleging a negligence claim related to an injury he suffered as a passenger while aboard Adventure of the Seas, a cruise ship operated by RCL, ECF No. [1]. Specifically, on June 20, 2016,

Lebron, a man in his forties, fell while ice-skating on the ice-skating rink located in Studio B onboard the Adventure of the Seas, ECF Nos. [115] at 1, [153] at 2. The Complaint only contains a single count for negligence but alleges that the Defendant breached its duty of care to Plaintiff in multiple ways, ECF No. [1] at 6-7. In its Amended Answer and Affirmative Defenses, Defendant RCL asserts, among other things, that it had no notice, actual, constructive or otherwise of any dangerous condition which Plaintiff alleges was the proximate cause of his damage, ECF No. [67].

II. **PLAINTIFF'S MOTION FOR SANCTIONS AND TO COMPEL SECOND CORPORATE DEPOSITION**

In the Motion for Sanctions, Plaintiff contends that when his counsel took the deposition of Amanda Campos ("Campos") on August 17, 2017, as a corporate representative of the Defendant, Ms. Campos was not adequately prepared to testify as to several of the topics designated in the Deposition Duces Tecum issued by the Plaintiff, ECF No. [73].[1] Plaintiff requests that the Court sanction the Defendant by permitting the jury to hear a negative inference instruction that the Defendant's failure to produce a corporate representative with knowledge of Plaintiff's designated areas of inquiry be taken as conclusive proof that, if Plaintiff had been afforded the opportunity to depose a corporate representative with such adequate knowledge, evidence favorable to Plaintiff would have been uncovered on each question asked, ECF No. [73] at 10. Plaintiff further requests that Defendant be precluded from presenting any argument or evidence at trial related to the areas of inquiry at issue. In the alternative, Plaintiff requests that the Defendant be directed to prepare another Rule 30(b)(6) deponent and that the Court permit the Plaintiff to conduct another deposition at the Defendant's expense. Plaintiff cites Federal Rules of Civil Procedure 26, 30 and 37 for the source of the relief he seeks.

---

[1] The Motion mistakenly states that the date of Ms. Campos' deposition was August 29, *2016*, ECF No. [73] at 2. Ms. Campos was deposed on August 29, *2017*, ECF No. [96-1].

In its written response, the Defendant argues that Amanda Campos provided adequate testimony as to the areas designated by the Plaintiff, including the types of skates offered to passengers, the maintenance and inspection of the ice rink, information about the CCTV footage, and the functions and responsibilities of the Studio B manager where the ice rink is housed, and the chief security officer. The Defendant points to specific testimony given by Campos in support of its position. In addition, as to RCL's policies and procedures, the Defendant asserts that Campos is unable to testify as to policies and procedures that do not exist, and further contends that Campos advised the Plaintiff that the principal person charged with maintaining the ice rink is Mr. Noel, the Studio B manager. The Defendant further contends that the Plaintiff was offered the opportunity to reschedule the deposition of Ms. Campos following the Court's ruling on August 25, 2017, regarding disclosure of prior incidents, because at the time of her deposition, Campos had just begun the process of retrieving the relevant data related to those incidents.

In Reply, the Plaintiff contends that Campos had a duty to review all of the documents relevant to those topics designated in the Plaintiff's Rule 30(b)(6) Deposition Duces Tecum even if the documents that needed to be reviewed had not yet been produced to the Plaintiff, ECF No. [84]. The Plaintiff further argues that although Campos answered that she did not know the answer to certain questions including details regarding the maintenance of the ice rink, the Defendant did not state that it did not have responsive documents, but rather only that Campos did not know the answers. Plaintiff thus contends that the Defendant failed to adequately prepare the witness. The Plaintiff further asserts that although Campos directed the Plaintiff to other witnesses who might know the answers to the questions posed by the Defendant, the Plaintiff was not required to depose additional witnesses and, in any event, those witnesses' testimony did not have the same weight as testimony from the Defendant itself.

### III. LEGAL FRAMEWORK

An organization being deposed pursuant to Federal Rule of Civil Procedure 30(b)(6) must "designate one or more officers, directors, or ... other persons ... to testify on its behalf," and these persons "must testify about information known or reasonably available to the organization." *Penn Mutual Life Ins. Co., v. Imperial Premium Finance, LLC*, No. 11-80818-MC-MARRA/JOHNSON, 2011 WL 13228574, *2 (S.D. Fla. Sept. 14, 2011) (citing Fed. R. Civ. P. 30(b)(6)). A Rule 30(b)(6) deponent need not have personal knowledge of the matters set forth in the deposition notice, so long as the organization sufficiently prepares the deponent to give knowledgeable and binding answers for the organization. *Penn Mutual Life Ins. Co.,* 2011 WL 13228574, at *2 (citing *Booker v. Massachusetts Dept. of Public Health*, 246 F.R.D. 387, 389 (D. Mass. 2007). As with other forms of discovery, the scope of permissible examination in a Rule 30(b)(6) deposition is broad; however, the Rule 30(b)(6) requires that matters for examination must be described "with reasonable particularity" by the deposing party. *Id.*

A discovery violation does not necessarily occur under Rule 30(b)(6) when a designated witness adequately testifies with respect to certain subject matters but not others, *See, e.g., Alexander v. FBI*, 186 F.R.D. 137, 143 (D.D.C. 1998); *EEOC v. American Int'l Group, Inc.*, 1994 WL 376052 (S.D.N.Y. 1994). Thus, although a Rule 30(b)(6) deponent must be adequately prepared, "the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Taffe v. Israel*, No. 16-61595-Civ-COOKE/TORRES, 2017 WL 1709693, *2 (S.D. Fla. May 3, 2017) (citing *Boland Marine & Mfg. Co., Inc. v. M.V. Bright Field*, No. CIV.A. 97-3097, 1999 WL 280451, *3 (E.D. La. May 3, 1999) (quoting *Zappa Middle E. Constr. Co. v. Emirate of Abu Dhabi*, No. 94 CIV.1942(DC), 1995 WL 686715, *5 (S.D.N.Y. Nov. 17, 1995)). This is so because "Rule 30(b)(6) is not designed to be a memory contest," and a deponent does not have to successfully answer every question posed by the opposing party in order to complete a

4

deposition. *Penn Mutual Life Ins. Co., v. Imperial Premium Finance, LLC*, No. 11-80818-MC-MARRA/JOHNSON, 2011 WL 13228574, *4 (S.D. Fla. Sept. 14, 2011) (citing *Great Am. Ins. Co. of N.Y., v. Vegas Construction Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008)). Nor is a witness expected to be omniscient or expected to have computer-like memory. *Taffe v. Israel*, No. 16-61595-Civ-COOKE/TORRES, 2017 WL 1709693, *2 (S.D. Fla. May 3, 2017) (citations omitted). A deponent must be prepared to answer questions concerning relevant facts reasonably known to the corporation, but need not be prepared to answer about any potentially relevant fact known by any employee of the corporation. *Penn Mutual Life Ins. Co.*, 2011 WL 13228574, at *4 (citing *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373-75 (D.D.C. 2007)). A Rule 30(b)(6) deposition does not require "absolute perfection in preparation," but only "a good faith effort on the party of the designate to find out the relevant facts." *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005). Thus, although a Rule 30(b)(6) witness who fails to give meaningful testimony about the majority of relevant deposition topics is tantamount to no witness at all, *Penn Mutual Life Ins. Co., v. Imperial Premium Finance, LLC*, No. 11-80818-MC-MARRA/JOHNSON, 2011 WL 13228574, *4 (S.D. Fla. Sept. 14, 2011) *(citing Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000), the mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation. *Costa v. County of Burlington*, 254 F.R.D. 187, 191 (D.N.J. 2008); *Chick–fil–A v. Exxonmobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *13 (S.D. Fla. Nov. 10, 2009) (explaining that a corporation need not produce witnesses who know every single fact-only those relevant and material to the incidents underlying the lawsuit).

IV. **ANALYSIS**

   A. *The Defendant's Deposition Notice and the Deposition Testimony of Defendant's Witnesses*

The Plaintiff's Second Re-Notice of Taking Videotaped Deposition Duces Tecum Upon Oral Examination of Defendant's 30(b)(6) Witness listed forty-one (41) different areas of inquiry. In response to the Plaintiff's Notice, the Defendant produced Amanda Campos as its corporate representative to testify. Ms. Campos, an attorney, is the senior manager of guest claims and litigation for RCL who oversees five adjusters who handle claims by the passengers. She was deposed by the Plaintiff on August 29, 2017 for approximately four hours. At the beginning of her deposition, Counsel for the Defendant produced to Plaintiff's Counsel documents that were responsive to the Deposition Duces Tecum issued by the Plaintiff. During her deposition, Ms. Campos testified about a variety of topics listed on the Plaintiff's deposition notice, including the various job descriptions for people working at the skating rink at the time of Lebron's fall, whether RCL maintained certain logs related to the ice skating equipment, the waiver signed by Lebron, and the manner in which ice skating sessions are generally conducted by RCL. Further, and relevant for the instant Motion, Campos testified that the stage and production manager was the person responsible for Studio B where the ice skating rink is located, ECF No. [96-1] at 14. She then testified about the responsibilities and duties of the stage and production manager including the maintenance of the ice rink and the use of the rink by the passengers, ECF No. [96-1] at 16. Campos further testified that earlier in the week before her deposition, she spoke to David Ferrie, the chief security officer aboard the vessel during the incident, regarding his investigation of Lebron's fall, ECF No. [96-1] at 100. At the end of the deposition, Ms. Campos testified that the Studio B manager, Mr. Noel, would have the answers to the questions that Ms. Campos did not, ECF No. [96-1] at 140-141.

On September 2, 2017, the Plaintiff deposed David Ferrie, RCL's chief security officer, regarding his investigation into Lebron's fall, that was conducted immediately after that fall occurred, ECF No. [98-1].

The Plaintiff thereafter deposed Ron Noel on October 6, 2017 for over seven hours. During that deposition, Mr. Noel provided responses to Plaintiff's questions about the maintenance and inspection of the ice, temperature of the ice rink, the sensors on the ice rink and how those sensors are monitored, ECF No. [97-1] at 19, 21, 64. Mr. Noel further testified about the training and duties related to resurfacing the ice, as well as the maintenance log for the ice resurfacer, ECF No. [97-1] at 23-25, 26, 64, 74.

Also, during his deposition, Mr. Noel testified about how and by whom the ice skates are sharpened, the policies related to sharpening the skates and the skate sharpening log, and employee certifications related to sharpening of the ice skates, ECF No. [97-1] at 59-60, 65, 47. He further testified about RCL's policies regarding the inspection and replacement of the laces on ice skates, and the inspection of and replacement of defective ice skates, ECF No. [97-1] at 9-11. Mr. Noel further testified about the availability of private ice skating lessons, ECF No. [97-1] at 22.

      B.    *The Defendant's Corporate Representative, Amanda Campos, Was Adequately Prepared and Any Additional Information the Plaintiff Sought Was Provided By the Testimony of Other RCL Employees and/or through Discovery*

The Plaintiff contends that Amanda Campos was not adequately prepared and failed to give sufficient answers to seven (7) of the areas that were identified in the Deposition Duces Tecum.[2] In support of this contention, the Plaintiff points to specific

---

[2] The Plaintiff identified the following Areas of Inquiry listed in the Plaintiff's Second Re-Notice of Taking Videotaped Deposition Duces Tecum, as areas in which Campos failed to provide adequate testimony:

7

**Area of Inquiry #1**

**Both the specific design, and composition of the ice rink and skating equipment involved in Plaintiff's incident, as well as any replacement and any materials that were applied and were supposed to have been applied to the area and objects involved in Plaintiff's incident, including but not limited to the original date of installation, application, the manufacturer, manufacturer recommendations for the maintenance, inspection and repair of the subject location and equipment, as well as the name of the builder, architect and/or installer of the ice rink and provider of skating equipment.**

**Area of Inquiry #2**

**For a period of five (5) years prior to the date of Plaintiff's incident to the present, any and all policies protocols and procedures for the maintenance of the subject location involved in the Plaintiff's incident, as well as the skating equipment, as well as any logs that would verify that said maintenance was performed, when it was performed and by whom, including information and documents describing any and all policies regarding the inspection of the subject area where the Plaintiff was injured and detail as to such policies of (a) who performs inspection for dangerous/hazardous conditions; (b) what specifically the crew member performing the inspection is instructed to look for; (c) the time frame that the inspections are to take place and (d) what happens when a dangerous/hazardous condition is identified.**

**Area of Inquiry #4**

**Any and all photographs, maps, video, and CCTV reflecting Plaintiff, Plaintiff's incident, the scene of Plaintiff's incident, and/or Plaintiff's damages and injuries. This area of inquiry is not limited to Plaintiff's time aboard the subject vessel.**

**Area of Inquiry #5**

**The names and addresses and phone number of all persons who are believed and/or known by Defendant, its agents and/or attorneys to have any knowledge concerning any of the issues in this lawsuit, including but not limited to Plaintiff's incident, Plaintiff's injuries and/or any of Defendant's affirmative defenses; and the subject matter about which the witness has knowledge.**

**Area of Inquiry #7**

**Any and all reports prepared and/or maintained by Defendant in the ordinary course of business regarding the Plaintiff's accident including but not limited to the ship's logs, repair and/or inspection logs and medical center logs, related to Plaintiff's medical treatment and/or accident.**

**Area of Inquiry #18**

**For a period of five (5) years prior to the date of Plaintiff's incident to the present, information and documents reflecting and/or relating to the ship's staff organizational structure and chain of command of personnel assigned to the ship's location.**

testimony given by Ms. Campos that Plaintiff claims was deficient. In response, the Defendant similarly points to other testimony given by Ms. Campos to demonstrate that Ms. Campos' testimony for each of those areas was sufficient. However, the undersigned concludes it is unnecessary to restate Ms. Campos' testimony as to every designated topic because it is clear, as discussed below, that the Plaintiff's challenges fail because Rule 30(b)(6): 1) does not require a corporate representative to provide testimony regarding information that the corporation does not have but rather requires an organization to testify about information known or reasonably available to the organization; 2) does not require a deponent to testify with computer-like detail as to unreasonably broad topics; and, 3) pursuant to Federal Rule of Civil Procedure 26, does not require a deponent to be prepared to testify to matters that are not relevant to any party's claim or defense.

As to the first issue, many of the questions that Campos was unable to answer relate to information that RCL does not maintain. For example, Ms. Campos testified that RCL has no logs that identify who specifically sharpened Lebron's skates, who inspected the skates prior to issuing them to Lebron, and who, if anyone, used the skates prior to Lebron on the date of incident, ECF No. [96-1] at 101-104. [3] She further testified that there is no way to know if the same laces that were on the skates when they were first purchased were the same laces that were on the skates when Lebron fell, what date

---

**Area of Inquiry #19**

**For a period of five (5) years prior to the date of Plaintiff's incident to the present, information and documents reflecting and/or relating to the ship's staff and comprehensive list of duties and responsibilities including, but not limited to, each staff member in command of administering the ship's ice skating events and activities.**

[3] Ms. Campos testified that all of the skates are supposed to be sharpened on a biweekly basis and stated that the Defendant had produced a portion of that log. Ms. Campos stated that she earlier that week she had spoken to the Studio B Manager to try to locate the sharpening logs and was informed that the ship would attempt to locate the remainder of the log in their system.

those particular skates were purchased, or how many times the skates had been used after they were purchased, ECF No. [96-1] at 104-108.  Thus, there are no grounds for contending that Campos was not adequately prepared on issues related to these inquiries, as RCL does not maintain logs or otherwise memorialize information related to these issues.

Second, the areas of inquiry designated by the Plaintiff were very broad, and, in many instances, did not specifically identify those areas that the Plaintiff contends that the witness was not adequately prepared to testify.  For example, in Plaintiff's Deposition Duces Tecum, the Plaintiff describes area of inquiry number 1, as follows:

> Both the specific design, and composition of the ice rink and skating equipment involved in Plaintiff's incident, as well as any replacement and any materials that were applied and were supposed to have been applied to the area and objects involved in Plaintiff's incident, including but not limited to the original date of installation, application, the manufacturer, manufacturer recommendations for the maintenance, inspection and repair of the subject location and equipment, as well as the name of the builder, architect and/or installer of the ice rink and provider of skating equipment.

ECF No. [73-1] at 2.  In his Motion, the Plaintiff complains that, despite being given the above description as a designated area of inquiry, Ms. Campos was not adequately prepared because she did not know whether the Defendant issued passengers both skates with and without the toe pick in Lebron's size, ECF No. [73] at 2-3.  However, area one is vague and very broad, and it is arguable whether questions regarding whether the ice skates with the toe pick came in Lebron's size fall within this topic of inquiry as described by the Plaintiff.  *See e.g., Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15–CV–2113–SI, 2017 WL 5630038, at *4 (D. Or. Nov. 22, 2017) (noting that because FRCP 30(b)(6) places substantial responsibilities and burdens on the responding corporate party, the rule itself expressly requires that the party requesting the deposition must describe with reasonable particularity the matters for examination).  In addition, because

Lebron only wore one type of skates, it is unclear how, given the vague topic one description, the Defendant should have anticipated that its corporate representative needed to be prepared to discuss other types of ice skates that may or may not have been available in Lebron's size. Further, as acknowledged by the Plaintiff, Campos *was* prepared to answer and *did* answer several questions about the types of skates available to the passengers and how the employees handed out those skates based on the passenger's foot size. Thus, Campos was able to provide information about the skating equipment that was generally referenced in the area one description.

The Plaintiff also contends that Campos did not know whether the lighting used for ice skating was different than the lighting used for a show such as the "Quest" game, which Plaintiff contends also falls into the area one designation, ECF No. [73] at 3. However, it is unclear how the lighting used in the "Quest" game, which unarguably was not being played at the time of the Lebron's fall, is within the very broad area one description provided by the Plaintiff.

Similarly, as to area 2, and again by way of example, Plaintiff argues that Ms. Campos was unable to answer questions about the age and servicing of the refrigeration equipment of the ice skating rink.[4] However, area of inquiry 2 does not expressly refer to

---

[4] At a discovery hearing held before the undersigned on October 11, 2017, and prior to the instant motion being filed, the undersigned briefly addressed the Plaintiff's concerns regarding the corporate representative's testimony at her deposition. The Court suggested that if it was determined that the answers given at the deposition were inadequate, the undersigned might require the Defendant to provide sufficient answers in an interrogatory format. A review of the record in this case reveals that in the Defendant's Response to Plaintiff's Limited Fifth Request for Production, which was served on November 1, 2017, the Defendant indicated that it was unable to locate written documents that indicated the model number of the refrigeration equipment for the ice rink at issue, but had provided the Plaintiff with the Ice Rink Manual and identified the model number and manufacturer of the compressor that was attached to the refrigeration equipment, ECF No. [89-1] at 1. In addition, the Defendant indicated that it was unable to find any documents that indicated how the Defendant maintained, inspected, repaired and stored the refrigeration equipment for the ice rink at issue, ECF No. [89-1] at 2. Finally, in its discovery Responses, the Defendant stated that the refrigeration equipment onboard the subject vessel was installed at the time the ship was built and, upon

refrigeration equipment and it is unclear if, at the time of the corporate representative's deposition, that there was any reason for the Defendant to believe that the refrigeration equipment played a part in the Plaintiff's incident that would alert the Defendant of the need to have a corporate representative witness prepared to testify regarding the maintenance of the refrigeration equipment.

The Plaintiff further complains that Campos did not have sufficient information about the specific qualifications held by two of the ship's onboard employees, and Paul Riley, one of RCL's shoreside employees, related to their respective job positions, ECF No. [73] at 9. Plaintiff argues that this information was described in areas of inquiry 18 and 19, which sought five years of information about the ship's organizational structure and chain of command, and a comprehensive list of duties and responsibilities of each staff member in command of administering the ship's ice skating events and activities, respectively. Thus, it does not appear that the areas of inquiry, as described, alerted the Defendant that the deponent needed to be prepared to discuss the qualifications of those employees. Rather, the description of those areas of inquiry seemingly refers to information about the job descriptions for certain employees and the Defendant's corporate structure. The Plaintiff's contention on this issue is particularly curious because the transcript reflects that Campos testified about the job descriptions and job functions of Ron Noel and David Ferrie, the two onboard employees at issue, and further, as acknowledged in the Plaintiff's Reply, the Defendant produced the personnel files for both of the onboard employees.

Plaintiff also complains that Campos did not know whether any of the skaters working at the time of Lebron's incident spoke Spanish, which Plaintiff contends fell

---

information and belief, has not required any repairs or maintenance, ECF No. [89-1] at 2. Thus, ordering an additional corporate representative deposition regarding the maintenance of the ice rink refrigeration equipment would serve no purpose.

within inquiry area 5, which indicated that the deponent should be prepared to testify as to the contact information of persons who have any knowledge of the Plaintiff's incident and injuries, or the Defendant's affirmative defenses. However, again, the description of area of inquiry 5 does not indicate that the deponent needed to be prepared to testify to the language spoken by the employees working at the time of Lebron's fall.

A corporation and/or its designated 30(b)(6) deponent is not required to be omniscient as to the areas that the deponent will be expected to testify. Here, many of the inadequacies that the Plaintiff complains about were not identified in the Deposition Duces Tecum with "reasonable particularity" such that the Defendant was alerted to the need to prepare the witness on those matters. Thus, the undersigned concludes that the corporate representative was adequately prepared to testify as to those topics identified in the Notice of Deposition, and to the extent that the Plaintiff's Counsel's questions exceeded the identified broad areas of inquiry, Ms. Campos appropriately directed the Plaintiff to the witness who had the information that the Plaintiff sought.

Further, Plaintiff seeks a level of detail in Campos' testimony that simply is not required under Rule 30(b)(6). For example, Plaintiff asserts that Campos was not prepared because she was unable to state how many times Defendant's passengers used private instructors for ice skating, ECF No. [73] at 8. Similarly, as to the Plaintiff's questions regarding the lighting used in a different show, Rule 30(B)(6) does not require the Defendant to produce a corporate representative who is able to provide, through oral testimony, an assessment of whether the lighting of the ice skating rink at the time of Lebron's fall was the same as the lighting conditions in the studio during other activities that do not involve ice skating, and did not involve Lebron's incident at issue in this case, ECF No. [73] at 3. The Plaintiff sought a similar level of detailed testimony regarding the length of the laces for other size skates that were not used by Lebron, ECF No. [73] at 4, 6. The Plaintiff also complains that Campos did not know the manufacturer

of the flooring that covers the ice when the studio is being used for other events. Further, the Plaintiff argues that Campos was not prepared when she was unable to state the qualifications of Ron Noel, David Ferrie and Paul Riley, ECF No. [73] at 9.

The undersigned declines to find that Rule 30(b)(6) requires such exact knowledge from corporate deponents. Rather, as explained by the Court in *Monopoly Hotel Group, LLC. v. Hyatt Hotels Corp.*, No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988 (N.D. Ga. June 4, 2013), in denying a motion seeking sanctions for a party's failure to produce an adequate witness pursuant to Rule 30(b)(6),

> There were some occasions when [the witness] did not know the specific answer. But the Court cannot conclude from this record that any of those responses reflected a failure to gather the facts reasonably known to the company. In covering 49 separate deposition topics, it was inevitable that [the] corporate representative or representatives might not know every answer to every question about specific dates or details of that sort. The occasional 'I don't know' in the context of this massively broad deposition does not itself reveal a Rule 30(b)(6) violation, if the witness otherwise took reasonable steps to prepare.

*Id.* at *6. Similarly, as stated by the Court in *Dealer Computer Services, Inc. v. Curry*, No. 12CIV.3457(JMF)(JLC), 2013 WL 499520 (S.D.N.Y. Feb. 7, 2013),

> Rule 30(b)(6) witnesses have an obligation to prepare in advance for their depositions, which will bind the corporate entity. It is unclear whether, in designating this topic, Plaintiff expects the 30(b)(6) witness to have committed to memory the identity, position, and title of each officer, director, and employee of all corporate defendants over a seven-year period, although that is the clear implication. A deposition is not a quiz, nor is it the most practical way to obtain such information. To the extent that such broad information is requested, Plaintiff should serve interrogatories to obtain it (and only if Plaintiff can satisfy the requirement that the name of every such person is relevant to its claims). In sum, Plaintiff may ask questions about the organizational structure of the corporate Defendants, but the 30(b) (6) witness is not expected to commit to memory the names of every officer, director, and employee who worked at any corporate defendant (or its predecessor or successor-in-interest) from 2005–2012 in preparing for the deposition.

*Id.* at *2. In this case, the undersigned concludes that Campos was adequately prepared to answer questions regarding RCL's general policies and procedures, and the duties of the relevant employees who worked in the ice skating rink, and following her discussions with the studio manager, as well as the, safety officer who conducted the investigation into Lebron's fall, was able to sufficiently answer questions relevant to the incident at issue.

In addition, many of the questions that the Plaintiff claims that the deponent was unable to answer arguably have little relevance to the claims and defenses at issue in this case. For example, as stated above, in his Motion, the Plaintiff complains that Ms. Campos did not know whether the Defendant issued passengers both skates with a toe pick and skates without a toe pick in Lebron's size, ECF No. [73] at 2-3. On this point, the Plaintiff states, ". . . it is possible that other ice skaters using skates with the ice pick could have caused gouges on the ice surface." ECF No. [73] at 3. It is unclear how Ms. Campos' testimony about whether both types of skates came in Lebron's size would help the Plaintiff determine whether other skaters using skates with a toe pick may have caused gouges on the ice surface.

Similarly, the Plaintiff contends that Ms. Campos did not know whether the lighting used for ice skating was different than the lighting used for the "Quest" game, ECF No. [73] at 3, ECF No. [84] at 4, n.1. Again, it is unclear how the lighting used in the "Quest" game, which unarguably was not being played at the time of the Lebron's fall, is "relevant to any parties' claim or defense." Thus the question is not relevant to the claims and defenses raised in this action. Accordingly, on this issue, the Defendant did not fail to provide an adequate representative to answer questions.

Moreover, the undersigned notes that this case does not present the type of problems that Rule 30(b)(6) sought to remedy—"namely, preventing serial depositions of various witnesses without knowledge within an organization and 'bandying,'--the name

given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself." *Alexander, v. FBI*, 186 F.R.D. 137, 152 (D.D.C. 1998) (citing Fed. R. Civ. P. 30(b)(6) Advisory Committee Notes, 1970 Amendment). Here, the Defendant provided witnesses who were able to provide unevasive answers to the bulk of the questions posed by Plaintiff's Counsel.

By way of example, Plaintiff complains that Campos was unable to answer questions regarding whether the responsible employees were certified for the maintenance of the ice rink, ECF No. [73] at 4. However, Ron Noels, the studio manager, whose deposition was taken more than a month after Campos' deposition, testified as follows when asked about the training and certification for RCL employees who operated the resurface,

> Q: . . . What kind of training is required to operate the ice resurfacer, Ron?
>
> A: A driving training; right? Operational training. And a maintenance training.

ECF No. [97-1] at 23. Noel then testified about what was required in the driving training, how long the training lasted, and provided the following regarding certification:

> . . .To get certified to drive the ice resurfacer is for two weeks. So within that two weeks, three hours a day we're going to do driving, we're going to do maintenance and—and operation also. So one day we're going to do driving. One day we're going to do operation. And one day we're going to do maintenance.

ECF No. [97-1] at 23. Similarly, to the extent that the Plaintiff complains that Campos did not provide sufficient testimony regarding the investigation of Lebron's fall, the Plaintiff was able to and did obtain that information from David Ferrie, the chief security officer aboard the vessel during the incident, who Campos testified she spoke with regarding his investigation of Lebron's fall prior to her deposition. Thus, Plaintiff seems to be

16

complaining, not that he has been unable to obtain the information from RCL that is necessary for him to prosecute his case, but rather, that he is not happy with the particular RCL employees from which that information was obtained. Tellingly, in this regard, the Motion for Sanctions that was filed after the depositions of Mr. Noel and Mr. Ferrie were conducted, does not identify what information that the Plaintiff does not have from RCL related to Lebron's fall that Plaintiff needs to prosecute his case.[5] Under such circumstances, the undersigned concludes that the Plaintiff is not entitled to the relief he requests.

In reaching this conclusion, the Court is mindful that the dual requirements of Rule 30(b)(6) are that the corporate designee (1) must "testify about facts within the corporation's collective knowledge" and (2) "must also testify about the corporation's position, beliefs and opinions," including its interpretations of documents and events. *QBE Ins., Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) (citing *Great Am. Ins. Co. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008)). In addition, the undersigned is aware that the answers provided by a Rule 30(b)(6) corporate representative bind a corporation to the answers provided by that deponent, whereas answers provided by an employee, not designated as a corporate representative, do not carry the same weight. However, in this case, it is unclear what answers Plaintiff seeks to bind the Defendant to that were unanswered by Campos, and subsequently answered

---

[5] The undersigned notes that towards the end of Campos' deposition, Plaintiff's Counsel asked the deponent if she knew how thick the ice was at the time of Lebron's fall and whether an ice edger was used when the ice was cleaned. The deponent was unable to answer those questions and was also unable to provide the exact temperature and humidity level required for the ice rink, but confirmed that RCL did have requirements for those specifications. Campos was specifically asked who would know that answers to the questions that she was unable to answer and she advised that the Studio B Manager, Ron Noel, should have those answers. However, Plaintiff's Counsel did not inquire about humidity, the thickness of the ice or the ice edger at Mr. Noel's deposition. In addition, at his deposition, when asked, Mr. Noel provided the exact temperature setting for the ice onboard the ship.

by another employee. On this point, the Plaintiff only states that he is entitled to get answers to the questions without having to depose another witness and that other witnesses' testimony does not have the same weight as the testimony of the Defendant itself. However, the Plaintiff fails to explain how this assertion is applicable here where the other employee witnesses have already provided the relevant deposition testimony and much of the other information has been provided to the Plaintiff through the Defendant's written discovery responses, which are also binding on the Defendant. As such, the Court finds no merit to the Plaintiff's contention under the facts of this case.

Further, the Plaintiff's contention that the Defendant should have sought a protective order prior to the deposition rather than "wasting Plaintiff's and now the Court's time by producing an unprepared witness", misses the mark, ECF No. [73] at 9. Here, the deponent's inability to answer all of Plaintiff's Counsel's questions was primarily due to the vague and broad descriptions for the areas of inquiry, coupled with the Plaintiff's unreasonable expectation that the witness should have been able to provide detailed answers to questions that were only tangentially related to the claims and defenses raised by the Parties. It is for this reason that the undersigned concludes that sanctions are not warranted in this matter. Simply put, the undersigned concludes that the answers provided by Ms. Campos were adequate and did not run afoul of the spirit or letter of Rule 30(b)(6).

Further, assuming *arguendo* that Campos was not adequately prepared for her deposition, Plaintiff's request that the Defendant perform a complete search of its records and produce another corporate representative to testify as to those documents would serve little purpose given that the Defendant has produced discovery subsequent to the corporate representative's deposition that indicates that the Defendant has no responsive documents in many of the areas that Plaintiff contends the witness was not adequately prepared. Similarly, Plaintiff's request that a negative inference be given that

Campos' failure to answer certain questions conclusively proves that the evidence would have been favorable to the Plaintiff is clearly disproportionate to any purported omissions in Campos' preparation, where the Plaintiff has received the bulk, if not all, of the information he sought in the deposition, and it is clear that the information is not central to the Plaintiff's case, and arguably wasn't favorable to the Plaintiff's case, in any event.

Finally, to the extent that the Plaintiff contends that Campos should have been prepared to discuss prior incidents related to falls on the ship, it is undisputed that the Defendant agreed to permit the deposition to go forward less than a week later, and after the Defendant had produced the prior incident documents as ordered by the undersigned. The Plaintiff elected to instead proceed with the deposition, and to seek sanctions for Campos' failure to be prepared to testify as to documents that she had just begun to assemble. Under such circumstances, the undersigned believes sanctions are not warranted. *See e.g. Smith v. Bank of America Home Loans*, No. 2:11-cv-676-FtM-29DNF, 2014 WL 169845 (M.D. Fla. Jan. 15, 2014) (denying motion for sanctions for failure to produce adequately prepared Rule 30(b)(6) deponent where, *inter alia*, movant exceeded the scope of the 30(b)(6) Notice and movant refused non-movant's offer to cure any inadequate deposition responses by providing additional responsive information).

V.   **CONCLUSION**

Accordingly, it is

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Sanctions Against Defendant for Failure to Produce a Corporate Representative With Adequate Knowledge of Designated Areas of Inquiry, Or in the Alternative Motion to Compel Corporate

Representative Deposition, ECF No. [73] is DENIED.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this 6th day of September, 2018.

_/s/ Andrea M. Simonton_
**ANDREA M. SIMONTON**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**Copies via CM/ECF to:**
**All parties of record**