UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-24687-CIV-WILLIAMS

EDGARDO LEBRON,

        Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR DIRECTED VERDICT

THIS MATTER came before the Court on Defendant's *ore tenus* motion for judgment as a matter of law made at the close of Plaintiff's case in chief. Defendant argued, pursuant to Federal Rule of Civil Procedure 50, that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [Plaintiff]" on two issues. During the trial, the Court granted the motion as to one issue and reserved ruling on the other issue, specifically, whether Defendant had notice of the dangerous condition prior to Plaintiff's accident. After the jury returned a verdict in favor of Plaintiff, the Court ordered the parties to submit briefing on the remaining issue of whether Defendant had notice. Those memoranda are now before the Court. Having considered the trial record and the parties' memoranda, the Court grants Defendant's motion because there was no evidence presented at trial by which a reasonable juror could conclude that Defendant knew or should have known about the gouges on the ice that, together with the broken skate lace, created the dangerous condition.

## I. Background

Plaintiff's one count negligence claim against Defendant went to trial on September 25, 2018. Plaintiff was a passenger onboard Defendant's ship when he and his daughter decided to go ice skating onboard the ship. Plaintiff maintains that one of the ice skates he was given had a broken lace and, thus, could not be properly laced. He also maintains that the ice in the ice rink had gouges in it, one of which caused Plaintiff to fall. Together, the broken lace and the gouges in the ice created a hazardous condition that Defendant failed to warn Plaintiff about or to correct.

Defendant argues in its motion that Plaintiff presented no evidence it had actual or constructive knowledge of the hazardous condition of the broken laces and ice gouge. As a result, Plaintiff failed to establish one of the elements of his claim. Consequently, Defendant argues it is entitled to judgment as a matter of law on Plaintiff's negligence claim.

## II. Applicable Standards

### A. Rule 50

Under Federal Rule of Civil Procedure 50(a)(1), after a party has been fully heard on an issue, a court may grant judgment as a matter of law against that party on that issue if the court finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Despite the similar standards for granting, the earlier denial of a summary judgment motion does not preclude a court from granting a Rule 50(a) motion. *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000).

## B. Notice

In the Eleventh Circuit, federal maritime law holds that the "benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Merely creating or maintaining the dangerous condition is not sufficient to impose liability. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). Constructive notice requires that the hazardous condition existed for a sufficiently lengthy period of time as to put a shipowner on notice of its existence. *Keefe*, 867 F.2d at 1322.

## III. Discussion

The Court ruled prior to the start of the trial, and as set out in the jury instructions, that the dangerous condition at issue in this case is the combination of the broken laces and the gouge on the ice.[1] *See* DE 297 at 8, 9, 12. Thus, in order to hold Defendant liable, there must be evidence that Defendant had actual or constructive knowledge of both the broken skate laces **and** the gouge on the ice. While there is sufficient evidence by which a reasonable jury could find that Defendant knew or should have known about the broken skate laces, there is not sufficient

---

[1]This ruling was based on Plaintiff's own sworn deposition testimony. Plaintiff testified "If you ask me what caused my fall, I would tell you it's a combination of both things, the problem in the ice and the defect in the skate." DE 119-1 at 124:4-10 (as corrected by interpreter). Plaintiff's claim seemed to evolve over the course of the litigation; therefore, it was necessary to clarify exactly what the issues were for trial. Given that a plaintiff is the principal and his lawyer is the agent in any attorney-client relationship, the Court followed the lead of the principal and held that the issue to be tried was whether the combination of the ice and skate caused Plaintiff's accident. *See C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (noting that the attorney-client relationship is "a quintessential principal-agent relationship" and "the client retains ultimate dominion and control over the underlying claim").

evidence by which a reasonable jury could find that Defendant knew or should have known about the gouges in the ice that, together with the broken skate lace, created the dangerous condition. Consequently, there is not sufficient evidence by which a reasonable jury could find that Defendant knew or should have known about **both** the broken skate laces **and** the gouges on the ice. Therefore, Defendant is entitled to judgment as a matter of law.

### A. Notice About the Laces

Defendant maintains that there is no evidence it had notice of the broken skate lace. Evidence was introduced at trial that Defendant inspected the skates after every voyage. [DE 179-1 at 36:21-37:19.] Defendant's representative testified that an employee inspected the skates and handed them to Plaintiff before he skated. [DE 291 at 9:13-19.] Plaintiff testified that shortly after receipt of the skates from Defendant, he discovered, while putting on the skates, that both ends of the lace on the right skate were torn. [DE 316 at 79:12-14.] Thus, there is evidence by which a reasonable jury could find that Plaintiff received the skates with a torn right lace and that the lace was torn when Defendant's employee handed the skates to Plaintiff. A reasonable jury could also conclude, based on this testimony, that Defendant knew or should have known about the torn laces because Defendant inspected the skates prior to handing them to Plaintiff. *See Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 Fed. App'x 531, 536 (11th Cir. 2018).

While Defendant argues that there was testimony that an inspection of the skates after the incident did not reveal broken laces, a reasonable jury could choose to believe Plaintiff's testimony instead of Defendant's employee's testimony. It is not for the Court to decide which evidence to believe. On a motion for judgment as a matter of law, the Court must only determine

if there is sufficient evidence by which a reasonable jury could find that Defendant knew or should have known about the broken laces. Consequently, there is sufficient record evidence for a reasonable jury to conclude that Defendant had actual or constructive knowledge of the torn lace.

Defendant also argues that, if the lace was broken, any hazard created by the broken lace was open and obvious.[2] A condition is open and obvious if a reasonable person would have observed the condition and appreciated the nature of the condition. *Aponte*, 739 Fed. App'x at 537. Defendant does not point to any evidence from which a reasonable juror could infer that a reasonable person would understand the risks associated with skating using ice skates that did not lace all the way to the top. Thus, there is insufficient evidence to establish that the hazard created by the broken lace was open and obvious.

### B. *Notice About the Gouges in the Ice*

Defendant contends that there is no evidence from which a reasonable jury could infer that Defendant knew or should have known about the condition of the ice or the specific gouge on which Plaintiff tripped. There was no evidence of prior complaints and no evidence that the gouge existed for such a period of time that it would have been discovered upon reasonable inspection. Plaintiff responds that Plaintiff's daughter testified that there were gouges on the ice when they first got on the ice, Defendant had employees in the vicinity of the ice, and Defendant failed to inspect the ice. However, as set out below, none of these things are sufficient for a reasonable jury to find that Defendant had notice of a hazardous condition on the ice.

---

[2]The parties were not asked to brief the issue of open and obvious. Thus, Plaintiff purposely did not respond to this argument.

The evidence presented at trial as to this issue is: Defendant's employee in charge of the area where the ice rink is located, Ron Noel, testified that he was not aware of any other reported incidents involving ice skating for the two years that he was in charge of the area where the ice rink is located. [DE 179-1 at 18:23-19:4.] He also testified that Defendant does an inspection of the ice after it is resurfaced and also prior to an all-skate session, like the one in which Plaintiff partook. [DE 179-1 at 69:9-24.] Mr. Noel testified that employees do a walk and visual inspection before the start of an all-skate session and are trained to report any issues with the physical condition of the ice. [DE 179-1 at 265:14-266:19.] On the day of Plaintiff's accident, no issues were reported. [DE 179-1 at 266:20-23.] Mr. Noel also testified that three employees are always present for an all-skate session, one whose job is to watch the ice. [DE 179-1 at 105:1-19.] Another of Defendant's employees also testified that, on the day of Plaintiff's accident, the ice was inspected after it was cleaned and then again prior to the commencement of the all-skate session during which Plaintiff skated. [DE 291 at 12:13-21.] Prior to Plaintiff's fall, passengers were skating on the ice for about an hour and there were no falls in the area where Plaintiff fell. [DE 179-1 at 268:9-16.] Plaintiff testified that, for the approximately 15 minutes that he was skating prior to his fall, he did not notice any grooves or gouges on the ice. [DE 316 at 95:9-96:10.] Plaintiff's daughter testified that when she got on the ice she noticed that the ice had gouges on it. [DE 320 at 9:8-12.] However, she did not testify that she notified, or complained to, any employees about the gouges. Plaintiff also points to the CCTV footage of the 10 minutes before Plaintiff's fall, which shows other people losing their balance in the same area where Plaintiff fell.

Based on the evidence admitted at trial there is nothing in the record from which a reasonable juror could conclude that Defendant had notice of the gouges in the ice that, together with the broken skate lace, created the dangerous condition. There is no evidence of any reports of problems with the ice on the day of the incident by employees or passengers. While Plaintiff argues that Defendant had employees in the vicinity of the ice, that evidence is not sufficient to show that the employee knew or should have known about the gouges. Plaintiff's reliance on *Aponte*, 739 Fed. App'x at 536, to establish that Defendant knew or should have known about the gouges based on its employees' proximity to the ice is misplaced. Unlike *Aponte*, where the large puddle of spilled soap and the large soap bottle on the floor would be visible to anyone standing nearby, particularly an employee who stood right next to it, there is nothing in the instant record to indicate that the gouges that, together with the broken skate lace, created the dangerous condition were easily visible to Defendants' employees who were in the general vicinity of the ice rink. Further, the Court notes that by the very nature of ice and ice skating, gouges will develop on an ice rink while people are skating. Nothing in the record indicates for how long the gouges existed.

Plaintiff's reliance on the CCTV footage to show notice is also misplaced because the footage shows people losing their balance on all areas of the ice. Ice is slippery and most of the passengers skating that day were unlikely to be practiced ice skaters. As Plaintiff's expert testified, "there's going to be a lot of falling just because they're not good skaters." [DE 321 at 29:0-21.] Thus, after viewing the CCTV footage, there is nothing in that footage indicating that the area where Plaintiff fell was more problematic than any other area of the ice.

Plaintiff also argues that Defendant could have discovered the gouges if Defendant had had employees regularly inspect the ice. Plaintiff's expert testified that someone should go out on the ice and inspect it after every session and before the next skating session. [DE 321 at 25:10-19.] Two of Defendant's employees testified that the ice was inspected after the prior skating session and before this one. Plaintiff also argues that it is an industry standard to have a skate guard on the ice to check for gouges. However, Plaintiff's expert stated that it is an industry recommendation, not a standard, to have a skate guard on the ice. [DE 321 at 44:4-9.] He also stated that a skate guard is there to prevent horseplay, to gather information and provide assistance if someone is hurt, and to inspect the ice *prior* to letting the public on. [DE 321 at 28:8-18.] Therefore, there is nothing in the record to indicate that if Defendant had exercised reasonable care a skate guard would have been present and nothing to indicate that a skate guard would have been constantly inspecting the ice. Thus, there is no evidence that Defendant did not follow industry standards or use reasonable care under the circumstances to inspect the ice.

Could Defendant have discovered the gouges had it inspected the ice even more frequently? Possibly. But that is not the standard. In order to hold Defendant liable, Plaintiff must show that Defendant knew or should have known, not *could* have known, about the condition. There was no evidence presented at trial by which a reasonable jury could conclude that Defendant should have known about the gouges in the ice that, together with the broken skate lace, created the dangerous condition. Based on the reasonable standard of care set out by Plaintiff's own expert – inspecting the ice prior to a skate session – Defendant used reasonable care. While Plaintiff tries to raise the standard of care by requiring Defendant to inspect the ice

more often, Plaintiff's own expert set out the industry standard[3] and the evidence presented at trial established that Defendant met that standard of care.  Consequently, there was no evidence presented at trial by which a reasonable jury could conclude that Defendant had notice of a condition that, together with the broken skate lace, created a dangerous condition of which it failed to warn or failed to take corrective action.

### C.  Concurrent Causation

Plaintiff argues that even if he did not establish notice as to one of the conditions, the broken lace or the gouges in the ice, it is sufficient that he established notice as to one because of concurrent causation.  This argument appears to be an attempt to bypass the earlier Court ruling that found that the dangerous condition at issue in this case was the combination of the broken lace *and* the gouges in the ice.  Thus, the Court found, and the jury was instructed, that the dangerous condition was the combination of the allegedly improperly maintained ice and the provision of a skate with a broken lace; neither of these things alone constituted the dangerous condition upon which Plaintiff based his claim.  Consequently, establishing that Defendant had notice of one of the conditions would be insufficient to establish that Defendant knew or should have known of the dangerous condition and failed to correct it or warn Plaintiff of it.  Thus, concurrent causation does not save Plaintiff's claim.

Accordingly, it is

ORDERED that:

1.  Defendant's *ore tenus* motion for judgment as a matter of law is GRANTED.

---

[3]Plaintiff relies on the industry standard to establish the reasonable standard of care that Defendant was obligated to follow.

2. Judgment in favor of Defendant will be entered by a separate order.

DONE AND ORDERED in Miami, Florida, this _18th_ day of December, 2018.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record